## PATRICK LANGAN v. THE CITY OF ATCHISON.

1. CITY, *When Liable for Negligence.* Where a person passing along the sidewalk of a much-traveled street in a city of the first class is injured by the falling of a bill or show-board, blown down by a strong wind, which bill or show-board was negligently and imperfectly constructed on private property, but was partly supported by studding or uprights nailed to the sidewalk, and was so near to and adjoining the sidewalk as to be dangerously contiguous thereto, and the officers of the city knew, before the falling of the bill or show-board, that it was not put up in a safe and proper manner, and that it was so insecure as to endanger persons passing on the street, *held,* the city will be liable in damages therefor, if the person so injured used ordinary care and prudence to avoid the danger.

2. DEFECTIVE SIDEWALK — *Use* — *Care Required.* A person is not to be entirely debarred from the use of a street because he may know it is defective or somewhat dangerous; but to be entitled to recover for the injury sustained by him by reason of the defective or dangerous condition of the street, he must have used ordinary care and prudence to avoid the danger.

3. ———— *Contributory Negligence; Recovery.* Upon examination of the evidence in the record, *held,* that it cannot be said, as a matter of law, that the plaintiff was guilty of such contributory negligence as to bar any recovery.

*Error from Atchison District Court.*

ACTION by *Patrick Langan* against *The City of Atchison*, brought August 15, 1882, to recover $3,500 as damages for personal injuries alleged to have been sustained by the plaintiff on September 26, 1881, while walking upon a sidewalk of the city, by the falling of a heavy structure of timbers and lumber used as bill-boards. The parts of the petition necessary to be stated are as follows:

"Long prior to the last-named date, defendant had caused and suffered to be constructed upon the south side of Commercial street and next west of Sixth street, within the corporate limits of said city, a large frame structure for the purpose of supporting thereon boards for the purpose of advertising shows, fairs, expositions, excursions and such other matters and things as are usually and commonly advertised by the posting of large paper bills. There had been long prior to that time upon the face or north front of such frame-work a large amount of boards and lumber, of the length of about forty-five feet, extending east and west upon said Commercial street, and of the height of about twelve feet, making about 550 square feet of one-inch lumber so supported upon said frame-work and constructed upon and adjoining the south side of the sidewalk and pavement upon said street. Said frame-work was, as constructed, dangerous, weak, defective and insufficient, and not constructed in a safe or secure manner. The uprights supporting said lumber were of insufficient strength to support the same and the pressure which might come against such lumber and frame-work, such as might be caused by the ordinary and common winds prevalent in that locality. The braces extending from said uprights were weak and insufficient to stay, support or strengthen the same to prevent said uprights and lumber thereon from being blown over and caused to fall upon the sidewalk and pavement in case of the pressure of such winds against the same. The fastenings of the ends of such braces were weak and defective, and insufficient to resist the strain of such winds upon the said lumber, uprights and braces, so as to make the said frame-work insecure and dangerous to passers-by along such street and sidewalk. Said frame-work and the lumber thereon had been in such condition for a long period of time prior thereto, to wit, for the space of more than two months, and all of which said weak and dan-

gerous condition of said frame-work, supports and lumber was then and during all such time well known to the officers, servants and agents of said defendant. But notwithstanding the said notice and knowledge, the said defendant by its said officers, servants and agents had suffered and allowed said frame-work and lumber to be in such insecure, unsafe and dangerous condition during all said period of time without any effort on the part of said defendant, its servants or agents, or any other person or persons, to make the same safe and secure.

" Plaintiff further states, that the said frame-work was constructed along and adjoining a sidewalk in said city of Atchison, which was frequently and generally used, and frequently and commonly thronged with large numbers of passengers, footmen and others who went about said city in the ordinary and usual discharge of their business, and who were thereby exposed to danger and loss of life and limb from such insecure and unsafe and dangerous structure.

" Plaintiff further states, that on or about said 26th day of September, 1881, and while going along said sidewalk in the discharge of his usual and ordinary business, in a careful and cautious manner, and without any fault or negligence on his part, the said frame-work with the lumber thereon, because of such defective, dangerous and insecure construction thereof fell over and upon this plaintiff and thereby caused him great personal injury, and he did thereby receive great bodily harm, and his spine and back were greatly and severely injured, and ligaments and muscles of his said back were lacerated and sprained, and his body, shoulders, arms and ribs were seriously bruised and injured so that he was thereby disabled, wounded and made sick in body and mind, and suffered great physical pain and mental anguish, and was thereby rendered unable to attend to his usual and ordinary business for a long period of time, to wit, for the period of more than four months, and continuously since that time has been subject to recurrences of the injury and suffering and disability from the wounds so received, and which have at times disabled him and rendered him incompetent and unable to attend to his usual and ordinary business."

The defendant filed an answer, (omitting court and title,) which alleged:

"*First.* That it denies each and every allegation, statement and averment in said petition contained.

"*Second.* For further answer to the petition of the plaintiff filed herein, defendant says: That if plaintff received any damage or injury at the time and in the manner or of the character alleged in said petition, such damage and injury were wholly caused and occasioned by his own gross and willful fault, and without any negligence or carelessness on the part of the defendant or any of its agents, servants, officers or employés.

"*Third.* For further answer to the petition of the plaintiff filed herein, defendant says: That the 'bill-boards' which in plaintiff's petition are alleged to have caused the injury complained of, were built and constructed on private property by private persons, for their own exclusive use and benefit, and neither the defendant nor any of its officers, servants or employés had any interest or share in the construction thereof; nor any notice of any defect therein at any time, nor had they or any of them at any time notice that said 'bill-boards' were unsafe or insecure, nor of any fact which would lead to the suspicion that the same were unsafe or insecure."

To the answer plaintiff filed a reply. Trial had February 22, 1884, before the court, with a jury. After the plaintiff had presented all his evidence, the defendant filed a demurrer thereto, which was sustained, and the jury discharged. Within three days the plaintiff filed a motion for a new trial, which on March 22, 1884, was overruled, and thereon judgment was rendered against the plaintiff in favor of the defendant for all costs. The plaintiff excepted to the rulings and judgment, and brings the case here.

*Jackson & Royse,* for plaintiff in error.

*Wm. R. Smith,* city attorney, and *John C. Tomlinson,* for defendant in error.

The opinion of the court was delivered by

Horton, C. J.: The plaintiff, passing along the south side of Commercial street, near Sixth street, in Atchison, was injured by a bill or show-board, which, having been placed on a lot adjoining the south side of the sidewalk, had been blown down by a strong wind and fell upon him. Upon the trial, a demurrer to plaintiff's evidence was sustained, the jury dis-

charged, and judgment rendered for the defendant. A motion for a new trial was made by the plaintiff, and overruled.

The record is before us for review, and the questions presented are—*first*, as to the liability of the city of Atchison to the plaintiff, if he was without fault, for the injuries inflicted upon him, as disclosed in the evidence; and *second*, whether, upon the facts proved, it can be said, as a matter of law, that the plaintiff was guilty of such contributory negligence as to bar him from the recovery of damages. The show or billboard, extending east and west upon Commercial street forty-five feet, and twelve feet high, stood upon an old foundation from which a building had been burned, and was built on private property close to and adjoining the south side of the sidewalk of the street. At the back of the structure were braces, and these were nailed to stakes driven into the ground, covered with bricks and ashes where the building had been burned. The braces were nailed against the stakes, and the stakes were three or four feet lower than the bottom of the bill-board. To further support the structure, there were several places or notches cut in the sidewalk about three inches in size, and studding slipped in and nailed. Some of the witnesses testified that uprights assisted to support the structure and were spiked into the stringers of the sidewalk; and others, that parts of the structure were actually upon the south edge of the sidewalk. There was evidence introduced tending to show that the structure was negligently and imperfectly constructed, and that before and at the time of its fall it was in such a weak and insecure condition as to be unsafe for persons passing in front of it upon the sidewalk. There was also evidence tending to show that the officers of the city knew that the structure was not put up in a safe and proper manner, and that before its fall it was in a condition to endanger persons passing on the sidewalk.

The contention on the part of counsel for the city is that the bill-board was private property, on private property, and used for private purposes only; and that if it were in close proximity to or even upon the edge of the sidewalk, the city would

not be liable for injuries resulting from its negligent construction or its unsafe condition at the time of its fall.

We do not concur with this view. The decisions in this state are numerous that cities having the powers ordinarily conferred upon them respecting streets and sidewalks within their limits, owe to the public the duty of keeping them in a safe condition for use in the usual mode by travelers, and are liable in a civil action for injuries resulting from the neglect to perform this duty. (*Jansen v. City of Atchison*, 16 Kas. 358, and cases there cited; *City of Salina v. Trosper*, 27 Kas. 544.) The injury occurred to plaintiff in September, 1881; at the time, Atchison was as now a city of the first class. Under chapter 37, Laws of 1881, entitled "An act to incorporate and regulate cities of the first class," etc., among other things the following duties and powers of the mayor and council of such cities are stated:

"To adopt all such measures as they may deem necessary for the protection of strangers and the traveling public, in person or property." (Art. 3, § 11, subdiv. 7.)

"To make regulations . . . . to prevent and remove nuisances." (Art. 3, § 11, subdiv. 11.)

"*To compel owners of property adjacent to walks and ways where dangerous, to erect and maintain railings, safeguards and barriers along the same.*" (Art. 3, § 11, subdiv. 15.)

"To enter into and examine all dwelling houses, lots, yards, inclosures and buildings of every description and other places, in order to ascertain whether any of them are in a dangerous state; and to take down or remove buildings, walls and superstructures that may become insecure or dangerous, and to require the owner of insecure and dangerous buildings, walls and other erections to remove or render the same secure and safe, at the cost of the owner or owners of such property." (Art. 3, § 11, subdiv. 18.)

"To require and regulate the planting and protection of shade trees in the streets and on public grounds of the city; the building of bulkheads, cellar and basement-ways, stairways, railings, window and doorways, awnings, hitching-posts and rails, lamp-posts, awning-posts, *and all other structures projecting upon or over or adjoining the street or sidewalk*, and all excavations through and under the sidewalks of the city." (Art. 3, § 11, subdiv. 27.)

"To cause to be constructed all sidewalks, determine the material, plans and specifications of the same, and to levy and collect special taxes for the payment thereof." (Art. 3, §11, subdiv. 43.)

"To compel owners or occupants of real property to keep in good order and proper place any of the improvements of any sidewalks, gutters, and also to clean and remove from sidewalks and gutters, ice, snow, or other substances." (Art. 3, §26.)

Under the powers conferred upon the corporate authorities of cities of the first class by the provisions quoted, and other provisions of the statute, it is their duty to keep the streets and sidewalks in such a condition that persons passing over or along them may do so with safety and convenience. It is also the duty of the mayor, as the executive officer of the city, to see that all laws and ordinances are enforced, and that all subordinate officers perform their duties. That the streets and sidewalks may be in a reasonably safe condition, it is the duty of the corporate authorities to remove or abate any nuisance from the streets or sidewalks. We think, in this case, that the city, especially under its power to prevent and remove nuisances and to regulate all structures projecting upon or over or adjoining the street or sidewalk, was bound to remove or protect the sidewalk from the imperfectly constructed and insecure bill-board standing so near the sidewalk as to fall upon it. It was so close to or upon the edge of the sidewalk that it could not fall in that direction without falling upon it. Having failed to take the necessary steps to remove the bill-board, or to protect the sidewalk therefrom, the city is liable for the damages caused by the falling of the board upon any person passing in front thereof along the sidewalk, if such person was injured without fault on his part. We do not think it is very material whether the bill-board was so close to and adjoining the sidewalk as to be dangerously contiguous thereto, or was actually supported by braces or uprights resting upon the south edge of the walk. The liability of the city would be the same in either case. (*Grove v. City of Ft. Wayne*, 45 Ind. 429; *Parker*

1. City, when liable for negligence.

*v. The Mayor &c. of Macon,* 39 Ga. 725; *Duffy v. City of Dubuque,* 18 N.W. Rep. 900; 2 Dillon on Mun. Corp., §§ 789, 794, 795; *Jones v. New Haven,* 34 Conn. 1; *Kiley v. City of Kansas,* 69 Mo. 102; Wood on Nuisances, § 744; *Bassett v. City of St. Joseph,* 53 Mo. 290.)   As announcing a contrary doctrine, we are referred by counsel of the city of Atchison, with apparently great confidence, to the cases of *Taylor v. Peckham,* 8 R. I. 349; *Hickson v. Lowell,* 79 Mass. 59; *Jones v. Boston,* 104 id. 75.

In *Taylor v. Peckham,* the town officials had not the same authority to enter upon or control the uses of property adjoining the street or highway as have the officials of cities of the first class in this state, and in that case the alleged liability was one created by statute alone; and it was decided that the courts could not enlarge the liability beyond the scope and intention of the statute.

In *Hickson v. Lowell,* the statute relating to the liability of towns was construed, and it was held that a town has discharged its duty under the statute when it has made the surface of the ground over which the traveler passes sufficiently smooth, level and guarded by railings to enable him to travel with safety and convenience, by the exercise of ordinary care on his part; and therefore that an injury resulting to a person on a sidewalk, by the falling of an overhanging mass of snow and ice from the roof of a building not owned by the city, did not constitute a defect or want of repair in the way or street for which the town would be responsible.

The decision in *Jones v. Boston,* followed *Hickson v. Lowell,* and the court there held that an insecure sign suspended over the sidewalk on an iron rod fastened to a building, was of the same character as overhanging ice.   These and other like decisions cannot be held as controlling under the statutes of our state, and the general principles of law which have already been announced by this court as to the liability of cities concerning streets and sidewalks.   However, in *Drake v. Lowell,* 13 Metc. 292, and *Day v. Milford,* 5 Allen, 98, the city of Lowell in the one case, and the town of Milford in the other,

were held liable for the injuries received by reason of defective awnings projecting over and across sidewalks, and the decisions do not appear to have been made upon the ground that the awnings or posts upon which they were supported were of themselves obstructions in the street; but those decisions are put exclusively on the ground of the insufficient strength or defective condition of the awnings, whereby persons passing upon the sidewalks were exposed to danger.

As to the alleged negligence of plaintiff, we think the trial court should have committed the case to the decision of the jury, because, under the circumstances, we do not think as a matter of law that the plaintiff was guilty of such contributory negligence as to bar any recovery. The question of contributory negligence is one for the jury to determine from the circumstances of the case, unless the facts raise such a presumption of negligence on the part of the injured person that the court is bound, as a matter of law, to instruct that no recovery can be had. "The fact that a person attempts to travel on a street or sidewalk after he has notice that it is unsafe or out of repair is not necessarily negligence." (*Corlett v. City of Leavenworth*, 27 Kas. 673.) The mere fact that a person knows the sidewalk is defective will not prevent him from using it; and ordinarily, a person is not obliged to forsake the sidewalk and travel in the street or take another way because he has knowledge of its defects. "The reasonableness of his action depends upon the distance of the surrounding way and the urgency of his need. And all this presents a question of fact for the consideration and determination of a jury." (*Maultby v. City of Leavenworth*, 28 Kas. 745; *Lyman v. Inhabitants of Hampshire Township*, [Supreme Court of Mass.,] 3 N. E. Rep., p. 211; *City of Emporia v. Schmidling*, 33 Kas. 485.) Of course a person having knowledge that a sidewalk is defective or somewhat dangerous, must use ordinary care and prudence to avoid danger.

2. Defective sidewalk; use; care required.

(*Munger v. City of Marshalltown*, [Sup. Ct. of Iowa,] 13 N. W. Rep. 642; *Corlett v. City of Leavenworth*, supra; *Schaefler v. City*, 33 Ohio St. 246.) If the jury, upon

the evidence in the record, had made a finding or returned a verdict that the plaintiff was guilty of contributory negligence, the finding or verdict would not be disturbed by this court, because there is testimony in the record tending to show that the plaintiff did not exercise ordinary care and prudence to avoid the danger; but the case stands in a different attitude before us from what it would occupy if the jury had passed upon the testimony. Then every conflict in the evidence and all the inferences therefrom would be resolved in favor of the result below; now they are against it.

The evidence shows that the plaintiff had knowledge of the defective construction of the bill-board; that it was liable to be blown down by the wind; and that a strong wind was blowing the day he was injured. It was also shown that there was another walk on the north side of the street, which was about eighty feet wide, by taking which he would have avoided the danger from the bill-board. On the other hand, as tending somewhat to qualify or rebut the alleged negligence of plaintiff, we cite the following facts: The bill or show-board had been constructed several months, perhaps a year or more, and the sidewalk in front of it was much traveled during all of this time; ever since it had been constructed the plaintiff had traveled over the sidewalk, once or twice every day; the day before he was injured he had opened a boarding house; that day he had been in the house most of the time, and out of the house only a few minutes before the injury occurred; the day was rainy and stormy, with a strong wind from the south; at the time of his injury he was going down the sidewalk to a printing office to get some business cards; by going upon the sidewalk where he was injured, he was sheltered from the rain and storm for quite a distance; he did not see the bill-board shake, or hear it crack, until it fell upon him.

In conclusion, it seems to us that here was testimony which ought to have gone to the jury. We do not mean to intimate that the jury ought to have found from all of the testimony that the plaintiff used ordinary care and prudence to avoid the danger, but we do say that,

3. Contributory negligence; recovery of damages.

as a matter of law, the court had no right to say that the plaintiff was guilty of such contributory negligence as to bar him from any recovery.

The judgment of the district court will be reversed, and the cause remanded for a new trial in accordance with the views herein expressed.

All the Justices concurring.