THE CITY OF OKLAHOMA CITY v. EMILY S. MEYERS.

1. JUROR—*What Qualifications Necessary*. Where a case is being tried against a city, the trial court may upon challenge, excuse from the jury all persons who are residents or tax-payers of the defendant city.

2. NEGLIGENCE—*Excavation Near a Street*. Where a city negligently permits an excavation to be made in such close proximity to a street as to endanger the traveling public, and a person, without fault, is injured by falling into such excavation, a recovery may be had for such injury.

3. INSTRUCTIONS. Where instructions are given by a trial court in an action against a city for personal injuries, caused by negligence of the city in not protecting its sidewalk from a dangerous excavation in close proximity thereto, it is not error to instruct generally as to the duty of the city in the care and management of its streets, bridges and sidewalks, and further *held*, that the verdict of a jury should not be reversed for the reason that they were misdirected in the law, unless it appears that the jury might have been misled by the instructions.

*Error from the District Court of Oklahoma County.*

Defendant in error instituted an action in the district court of Oklahoma county against the plaintiff in error to recover damages in the sum of two thousand dollars, for personal injuries received through the negligence of the city in leaving an excavation in close proximity to a street. A verdict was had in the lower court in favor of the defendant in error in the sum of $500. To reverse the judgment the city appeals the case. The opinion states the facts.

*R. G. Hays* and *J. S. Jenkins*, and *W. R. Taylor*, for plaintiff in error.

· *A. T. Stone* and *Charles H. Eagan,* for defendant in error.

The opinion of the court was delivered by

DALE, C. J.: October 2, 1893, Emily S. Meyers brought an action in the district court of Oklahoma county against the city of Oklahoma City to recover a judgment in the sum to two thousand dollars for personal injuries received from a fall into an excavation near the sidewalk of one of the streets of said city. To the petition filed the plaintiff, the defendant below, answered by a general denial, and an allegation or contributory negligence and upon the issue so joined the cause was tried to a jury and verdict returned in favor of the plaintiff below in the sum of $500 and costs. From the record of the evidence it appears that at about eight o'clock on the night of May 14, 1895, the plaintiff below was traveling west on foot upon the north side of a street named Grand avenue, in Oklahoma City; that there was no sidewalk built for foot travelers along the place where she was walking, but the ground was smoothly worn by pedestrians passing along where she was then traveling and that the side of the street was generally used by people traveling on foot. The place where plaintiff below received the injury was near the intersection of Hudson street and Grand avenue. Hudson street on the north side of Grand avenue intersects with such street fifty feet west of where Hudson street joins Grand avenue on the south, there being a jog in the survey of Hudson street where it intersects with such street. There was a cross-walk on Grand avenue from the east side of Hudson street to the north side of Grand avenue, which cross-walk strikes the north side of Grand avenue about fifty feet east of the east line of Hudson street, leading north from Grand avenue. It appears that the owner of the lot abutting on Grand

avenue, lying due north of where Hudson street intersects the south line of said Grand avenue, had made an excavation in his lot the south side of which excavation was within from three to six feet of the walk used by foot passengers in passing along the north side of Grand avenue. The surface of the ground between the walk and the excavation was level. This excavation had been made about one year previous to the time of the alleged injury. There were no barriers erected between the excavation and street and no lights or other warnings of danger. On the night when the accident happened it was dark and had been raining. It does not appear that plaintiff below knew of the excavation before she received the injury complained of. As she was walking west on the north side of Grand avenue she came to the cross-walk leading to the south from the north side of Grand avenue, and, thinking she had reached Hudson street leading north from the north side of Grand avenue, turned to go north on the east side of Hudson street, stepped into the excavation and received a serious injury. On proof of this state of facts the jury returned its verdict upon which the court entered its judgment and to reverse such judgment the case was brought here.

Numerous assignments of error are made by counsel for appellant in their briefs which they ask this court to pass upon, and they may be summarized as follows:

1. Error in excluding residents of Oklahoma City from the jury.

2. Refusal of the court to give an instruction asked, and in giving instructions which it is insisted were not applicable to the facts developed by the evidence.

I. Over objection of counsel for the city, the court below, upon challenge of the plaintiff excused from the jury all persons who were residents of, or taxpayers in

Oklahoma City. It is earnestly insisted, that the court should not have excluded residents of a city, especially those who were not taxpayers. No authorities are cited in support of this contention, but we are aware of the fact that the courts have decided both ways upon this question, and a decision either way would have the support of authority. This question has never been directly passed upon by this court, but in *Bradford v. Woods,* 2 Okla. 228, in speaking of the discretionary power of the trial judge to excuse jurors, this court by Burford, J., said:

"It is the duty of a trial court in the selection of a jury for the trial of a case, civil or criminal, to see that jurors are obtained who are fair and impartial between the litigants; who will not be influenced or biased by previously formed opinions or actuated by motives other than a desire to render exact justice to both parties. A very large discretion is vested in the court in determining the competency and qualifications of jurors and its action should never be disturbed by an appellate court, unless an abuse of such discretion is clearly apparent."

Under this decision it would seem that the appellate court should not reverse the ruling of the trial judge in excusing persons as jurors, unless it is shown that the discretionary power of the court was abused to such an extent as to work an injustice to one of the parties, or that the action of the trial court might have worked such injustice.

We do not regard it as a right belonging to a litigant that he have jurors from any particular locality within the county in which the cause is being tried. If a party to such cause is provided with jurors from any part of the county who are qualified, under the law, to sit in a case, he has had a proper jury. And before an appellate court should reverse a verdict upon the charge that

44—IV.

challenges allowed prevented a party from having a fair trial, it should affirmatively appear that the ruling of the trial court might have been prejudicial. No claim is made to this effect. The peremptory challenges allowed to appellant in the court below were waived, and nowhere does it appear in the record that the jury acted from improper motives in arriving at their verdict. A question similar in principle to the one under consideration arose in *City of Abilene v. Hendricks*, 36 Kan. 196. In that case the trial court directed the clerk, in calling the names from the jury list for the purpose of empanelling the jury, to omit the names of such persons as were known residents of the city. The supreme court held that no error was thereby committed. Upon this question we conclude that in a case where a city is a defendant, the trial court commits no error in excusing from the jury all persons who reside in or are taxpayers in a defendant city.

II. It is insisted by counsel for appellant that the court below erred in refusing to give an instruction offered on behalf of appellant, as follows:

"If the jury find in this case that the excavation complained of was back on the lot on the private property of Ted Hill, and from four to eight feet from the line of the street, and that a person passing over the street would not by reason of the surface of the ground fall into such excavation, unless he first left the street, then you are instructed that if the plaintiff left the street and fell into such excavation, the city would not be liable, although they may not have placed barriers along such excavation."

This instruction would preclude a recovery in the case, unless the excavation lies so close to the street that a person passing along the sidewalk would fall from the street into the excavation without passing over any inter-

mediate ground.  No authority is cited in support of such proposition.  We have examined into this question somewhat in order to determine whether or not the prin-ciple contended for by counsel in the instruction asked is correct.  The extent of the liability of the city for personal injuries may be said to depend somewhat upon the control granted by the legislative authority to a city over its streets.  Such liability is increased or dimin-ished, relatively speaking, as the authority of the city over its streets is extended or narrowed.  In this Terri-tory in cities of the first class, like Oklahoma City, the legislature has given a broad control over the streets to the city authorities.  Section 27, ch. 14 of the act re-lating to cities, reads as follows:

"Section 27.  The council may prohibit and prevent encroachment into and upon the sidewalks, streets, ave-nues, alleys and other property of the city, and may pro-vide for the removal of all obstructions from sidewalks, curb-stones, gutters, and cross-walks at the expense of the owners or occupiers of the ground fronting thereon or at the expense of the person placing the same there; the council may also regulate the planting and protec-tion of shade trees in the streets, the building of bulk heads, cellar and basement ways, stairways, railways, windows and doorways, awnings, hitching posts and rails, lamp posts, awning posts and all structures projecting upon or over and adjoining, and all other excavations through and under sidewalks, or along any streets of the city."

By this section and others of a similar nature, the legislature gave to cities of the first class in this Terri-tory ample power to control the streets and to make them safe for the traveling public.  If a dangerous excavation is in such close proximity to the street as to make travel-ing on such street dangerous, it matters not to the person injured that it may not have been within the limits of a

street.   The safety of the  traveler  is what the law seeks
to protect, and if he has the right to the use of the street,
he may presume that the authorities in control have pro-
vided a safe place for travel.   It cannot be said that a
safe place for travel has been provided if abutting the
sidewalk or in close proximity  thereto there is permitted
a deep excavation which even the most careful of passen-
gers would be in danger of falling into.

*Langan v. City of Atchison*, 35 Kan. 318, is a case
where a person walking along a street was injured by the
falling of a large bill or show board blown down by a
strong wind.   It was erected on private property and as
shown by the evidence, in a negligent manner.   The
court in which the cause was tried sustained a demurrer
interposed on behalf of the city, holding thereby that the
city was not liable in damages for the injury sustained.
The supreme court reversed the ruling of the lower court
and in the opinion state the law as follows:

"The decisions in this state are numerous that cities
having the powers ordinarily conferred upon them respect-
ing streets and sidewalks within their limits owe to the
public the duty of keeping them in safe condition for use
in the usual mode by travelers, and are liable in a civil
action for injuries resulting from the negligence to per-
form this duty."

Citing in support of this principle, *Jensen v. City of
Atchison*, 16 Kan. 35; *City of Salina v. Trosper*, 27
Kan. 544.

Following this decision in a case entitled *Board of
Commissioners of Shawnee County v. City of Topeka*, 39
Kan. 197, the supreme court of Kansas said:

" The law in the absence of any express provision of
the statute imposes upon a city of the first class the duty
to keep its streets, avenues, alleys and bridges in a safe
condition for the traveling public. This is implied under
the ordinary powers conferred upon it by statute, with-

out any express provision.  This duty appears to be imposed upon the city as a municipal corporation and the duties devolving upon its officers having the care of the streets rest upon them as officers of the city.  The power to repair and maintain the streets in a safe condition conferred upon the corporation is implied by authority to levy taxes and impose local assessments for that purpose.  In conformity with these general rules the duty to repair streets is considered to exist without special statutory provision.  We think we can safely say this is the law."

An examination of the statutes of the state of Kansas does not show any greater responsibility in the care and maintenance of the streets of a city than is placed upon the authorities of a city in this Territory, and in that state, from an examination of the decisions it would seem that the safety of the traveler is the principal consideration which the authorities of the city should have in view in the care and management of its streets and sidewalks.

In *Basset v. City of St. Joseph*, 53 Mo. 290, 14 Am. Rep, 466, is reported a case wherein it was held that a city is liable for an injury caused by reason of a person falling into an excavation which abutted a side of a street.  In the opinion the court said:

" If the excavation, being outside of the street, did not render it dangerous to travel, and the highway remained reasonably safe to travelers, it would not become the duty of the city to place there, guards or other protection to prevent persons from falling into the excavation; of course no negligence could be imputed; but whenever it becomes the duty of the city to afford protection, then a negligence to perform the duty will create a responsibility upon the part of the city to those who may receive injury in consequence of such negligence, whether the injury is received by falling into an excavation that is in the street or so near to it as to render it dangerous to those who travel upon the highway."

In *City of Lincoln v. Beckman*, 23 Neb. 677, is a case where an injury occurred by a party falling off a sidewalk into an excavation. It was contended that the city did its duty if it kept its sidewalks in good condition. Upon this question the court said:

"It seems to be the contention of counsel for plaintiff in error that if defendant received her injury by falling off the crossing into the excavation or depression, she could not recover, provided the sidewalk and crossing were in themselves perfect. That is, she could not recover anything unless she was able to show that the sidewalk and crossing were in a broken condition, out of repair, or imperfect in their construction. This we do not think is the law, and the instruction referred to was properly refused. We think it tolerably well settled that in questions of this kind, the question of care was one of fact, it is one which should be left to the jury under all of the circumstances of the case, and if they find that the defendant in error in the exercise of ordinary care, fell from the sidewalk into the excavation or depression and received the injury and that it was negligence on the part of the city to allow such a depression or excavation to remain so near the sidewalk as to render it dangerous, then she could recover. The whole question of negligence, both upon the part of the plaintiff and defendant was for the jury to determine."

The members of this court are unfortunately very much limited in time and our library is insufficient to enable us to make an extended review of all the decisions bearing upon the subject under discussion, and we will not therefore attempt to so do. It appears however, from what we are able to gather in our research that most of the New England states have adopted statutes which in direct terms make a town or city liable for its negligence in the management of its streets, and in Massachusets it is held that in the absence of such statute no liability attaches to a town or a city. (*Oliver*

*v. Worchester*, 102 Mass. 489.)   And while there are a number of decisions in those states holding towns and cities liable for injuries received for permitting dangerous obstructions and excavations to exist outside of its streets and sidewalks, but in close proximity thereto, yet they must be considered in the light of statuatory enactments.   A case we find frequently cited in support of the view that a city is liable by reason of its negligence in permitting an excavation or other dangerous place to exist off from the street or sidewalk, but in close proximity thereto, by states which have adopted no statute upon the subject is *Alger v. City of Lovell*, 3 Allen, 402, and *Drew v. Town of Sutton*, 55 Vermont, 586, 45 Am. Rep. 644.   The latter case is an instructive one upon this subject.   And in such case the facts are almost identical with those in the case we are here deciding.   An excavation was allowed to be made which came within six inches of the highway, and in the darkness of the night, a person drove off the road and into it, and the supreme court of the state held that he could recover for the injury received.   A very able dissenting opinion was filed in the case by one of the judges of the court.

In *Hudson v. Marlborough*, 154 Mass. 218, the supreme court held that no recovery could be had for an injury received at a point twenty-five feet from the road, as a place at such a distance from the road would not as a matter of law, be in such close proximity thereto as to make traveling thereon dangerous.   In most of the states where there is no express statute, the cities are held to a liability for negligence in permitting their streets to remain in a dangerous condition for travel. Such decisions are based upon statutes similar to ours and hold that by reason of the control and management vested in cities by legislative enactment, there is an im-

plied liability for negligence in case the cities fail to keep their streets in a reasonably safe condition for use by the traveling public; and this liability is not restricted to defects which exist within the limits of, or upon the walks of the streets or her road-beds, but if a city negligently permits a fence or awning which overhangs a street, or a wall at the side of the street to remain in an unsafe condition, after notice of its danger, any person injured thereby may in the absence of contributory negligence recover. (*Grove v. City of Ft. Wayne*, 45 Ind. 429; *Langan v. City of Atchison, supra.*)

And we think that it is equally well settled that where a city permits an excavation to exist within such close proximity to a street as to make it unsafe for a prudent person to use the same, and an injury result from no fault upon the part of such person, a recovery may be had. As to how close to the street the excavation must be in order to allow recovery would, in most cases, be a a question for the jury. It might frequently happen that it would be the duty of the court to say as a matter of law that no recovery could be had, but this would be only in that class of cases where it was plainly apparent that the person injured was guilty of contributory negligence in straying off the street or where the excavation was so far removed therefrom as to enable a court to say that the authorities had no reasonable ground to believe that an injury would probably occur if the excavation was left in an unguarded condition. We conclude, therefore, that where, as in this Territory, the legislature has given to cities plenary powers over the streets, the cities in their management and control thereof, are bound to so exercise their powers with the view primarily of preserving the safety of the traveling public, and that a recovery may be had for injuries received on account of negli-

gence of the city in permitting an excavation to be made in close proximity to a street in use generally by the traveling public.

III. It is urged that the instructions given by the court below were not applicable to the case on trial, and that the jury was probably misled thereby. It is unquestionably true that a court should instruct only upon such a state of facts as there is some evidence to prove. Abstract questions of law which have no relation to the facts testified to by the witnesses should never be given to the jury as instructions in the trial of a case. · But unless an appellate court can say that a trial judge has given instructions which are not applicable to the case and which may have misled the jury, the cause should not be reversed. Before the party appealing can demand a reversal he must show his injury. It will not do to send a case back for new trial merely because the trial court may be technically wrong. The instructions complained of number from 10 to 23 inclusive, some of which are set out in full and argued in the brief. Those to which our attention has been directly called are as follows:

" Instruction 12. The jury are instructed that it is the duty of a city to keep and maintain its streets and sidewalks in good repair for safe and convenient use, and maintain its sidewalk in a reasonably safe condition for the use of pedestrians.

" 14. The fact that the defect in the unsafe condition of the sidewalk had been of long standing and open to any observation, if so proven, is constructive notice to the defendant, and if the defendant had such notice a sufficient length of time with reasonable diligence to have repaired it before the accident occurred, defendant is liable.

"15. The fact, if so shown, that the excavation was on a lot owned by a private party does not exonerate the

defendant nor excuse the city from its liability, as it was the defendant's duty to maintain the sidewalk in a safe condition.

"18. You are further instructed that as a matter of law, any person traveling upon the sidewalk of a city which is in constant use by the public, has the right when using the same with due diligence and care, to presume and to act upon the presumption that it is reasonably safe for ordinary travel through its entire width and free from all dangerous holes, obstructions and other defects.

"19. You are further instructed that a traveler on a public street is held to the exercise of only ordinary care. Some negligence which is a want of extraordinary care, will not defeat a recovery for an injury received in consequence of a defect in the street, provided that the evidence shows that the city authorities were guilty of negligence in permitting the defect to exist in the street, and that the traveler was injured thereby and was using ordinary care to avoid the injury."

The 20th instruction in substance and effect is the same as the 19th. The 23d instruction refers to the measure of damages. It is contended that these instructions should not have been given because they refer to an injury sustained by reason of some defect in the sidewalk of a street, or within the street lines, whereas the injury complained of occurred off a street, and not upon a sidewalk. That the use of the term sidewalk was misleading, because no sidewalk existed at or near the place where the injury occurred.

Perhaps the court may have failed to point the instructions with as much exactitude as the nature of the case permitted, but still they each state a principle of law applicable to the questions at issue.

This was a case for damages on account of the negligence of the city in the management of its streets. Instruction 10 states the law correctly relative to the duty

of a city in the control of its streets, sidewalks and bridges, and its liability in case of its failure so to do. It is true there was no particular reason for using the word "bridges" in the instruction, but we fail to see how that matter prejudiced the appellants. The 11th instruction states the law relative to repairs of streets and sidewalks, and the condition in which they must be kept. This instruction would perhaps more properly refer to a case of injury on account of a street or walk getting out of repair but it would also refer to that condition of a street which had originally been safe for travel and by reason of the excavation, either in or upon the side of the street, had become unsafe. Instructions 14 and 15 state the law correctly as to notice, and liability of a city for an injury sustained by reason of the city permitting a private person to so use his property as to injure the traveling public. Instruction 18 was held by this court in *City of Guthrie v. Swan*, 3 Okla. 116, to be erroneous when applied to the facts of that particular case. But the court was then considering a case where the party injured had left a defective and impassable sidewalk and gone out into that portion of the street used for vehicles, and, under the evidence, the court found that the city had attempted to provide a safe passage way for persons using the street. It was held that the question of contributory negligence upon the part of the city under such circumstances was a question of fact to go to the jury, and that the instruction was erroneous because it took such fact from the jury. The case we are now considering does not involve a question of injury sustained inside the limits of a street, and although we agree that instruction 18 is bad as an abstract proposition of law, yet we do not think the jury could have been misled thereby.

Instruction 19 is also erroneous. It leans toward the law of comparative negligence, which doctrine has been repudiated in most of the states of the union, and has never obtained a foot-hold in this Territory, and it has been well said that the law "has no scales to determine in such cases whose wrong-doing weighed the most in the compound that occasioned the mischief." But here again we fail to find, and counsel do not in their brief attempt to show, wherein the city was injured. An examination of the record shows no act upon the part of the person injured which would justify the jury in finding her guilty of any negligence, and especially of contributory negligence, and in view of the evidence, we do not think the city could have been prejudiced by the instruction.

The brief of appellent does not attempt to show wherein the law is incorrectly stated in all these instructions. The only objection seriously urged is that they refer to the injury as having occurred by reason of the defective condition of the street and sidewalk, and stress is also laid upon the fact that no sidewalk was laid on the street by the city, and that the accident did not happen in the street. A sidewalk does not necessarily consist of a walk made of boards or a place paved or otherwise improved for the use of foot passengers; but it may be a place set apart at the side of the street for the use of that portion of the public that travel on foot. It may be that for an accident happening upon such a walk, the improvement of which the city has never undertaken no recovery could be had, but upon this question we do not pass; but where the city through its negligence permits a person to make dangerous excavations so near to this natural walk as to make traveling thereon dangerous, then the city by its own wrongful

act has so contributed to the injury as to make it liable. Upon the facts as disclosed by the evidence in this case the plaintiff below received the injury without fault upon her part and in a most natural manner. She was walking west on the north side of Grand avenue, and came to a cross-walk leading from the east side of Hudson street on the south to the north side of Grand avenue. She being a stranger to that portion of the town would naturally suppose she had reached the east side of Hudson street leading north from Grand avenue. And wishing to go to the north, she turned at the place where she supposed Hudson street was and stepped into the excavation several feet deep, which had been dug a year previously and was allowed to remain in such exposed condition for such length of time. It was a trap which was liable to catch the most wary traveler and which ought never to have been permitted by the city. Under the evidence the plaintiff below was clearly entitled to recover, and we do not find that the appellant's rights were prejudiced by the instructions given or refused.

The judgment of the lower court is affirmed.

Scott, J., having presided in the court below, not sitting; all the other Justices concurring.