DUNCAN BROTHERS, a Partnership,
Plaintiffs in Error,

v.

Troy ROBINSON and Mrs. Troy Robinson,
Defendants in Error.

No. 36561.

Supreme Court of Oklahoma.

Jan. 24, 1956.

Rehearing Denied Feb. 21, 1956.

Application for Leave to File Second Petition for Rehearing Denied

March 27, 1956.

signments of error under three propositions which will be considered in the order presented, the first being: "A demurrer both to the petition and to the evidence should have been sustained because of the absence of competent proof of causation". A demurrer to plaintiffs' petition was overruled by the trial court and such ruling is here assigned as error but no argument is made thereon.

A demurrer to the evidence of the plaintiffs, Mr. and Mrs. Troy Robinson, was presented in the trial court on the grounds that such evidence failed to prove a cause of·action against defendants, the demurrer was overruled, and defendants then filed motion for directed verdict, which was also overruled. The defendants, Duncan Brothers, offered no evidence and requested an instruction directing a verdict in their. favor, which was denied.

█ In support of their first proposition the plaintiffs in error cite and quote from several decisions from this and other courts which establish the rule that in order to sustain a recovery in an action based on negligence there must be a causal connection between the negligence averred and the injury received and such causal connection cannot be established by basing inference upon inference or presumption upon presumption. Among the cases cited is Prest-O-Lite Co., Inc., y. Howery, 169 Okl. 408, 37 P.2d 303, which holds:

"1. In order to sustain a recovery in an action based on negligence, there must be a causal connection between the negligence averred and the injury received, and such causal connection cannot be established by basing inference upon inference, or presumption upon presumption.

"2. As a general rule, the proximate cause of an injury in negligence cases is a question of fact for the jury, but where all of the evidence favorable to plaintiff, together with all inferences drawn therefrom, is insufficient to point out clearly a causal connection between the alleged negligence of defendant and plaintiff's injury and

Houston, Klein, Melone & Davidson, Henry Kolbus, Tulsa, for plaintiffs in error.

John W. Tillman, Fred A. Tillman, Pawhuska, for defendants in error.

HUNT, Justice.

This is an appeal by Duncan Brothers, a partnership, from a judgment of the District Court of Osage County, entered pursuant to a jury verdict in favor of Mr. and Mrs. Troy Robinson for the sum of $4,100 for loss of property by fire alleged to have been caused by negligence of the defendants. Plaintiffs in error present their as-

where no element of willful and intentional wrong is present, it becomes a matter of law for determination by the court."

We recognize such rule but are unable to agree with the statement and argument of counsel for plaintiff in error to the effect that there was no material evidence to warrant a submission of the case to the jury and that the announced rule is controlling in the present action. On the contrary, we conclude from an examination of the record that the evidence was such as to require a submission of the issue to the jury. The rule here applicable, as we view the record, is announced in Magnolia Petroleum Co. v. McGeeley, 203 Okl. 470, 223 P.2d 131, 132, which holds:

"1. In a law action tried to a jury, this court will not weigh the evidence, but will examine the record to determine whether there is any competent evidence to support the verdict and judgment based thereon. If any competent supporting evidence is found, the judgment will not be disturbed on appeal."

The opinion quotes with approval from an earlier decision, Pierce Oil Corp. v. Puckett, 99 Okl. 228, 226 P. 364, as follows:

" 'Where there is any competent evidence offered by the plaintiff, reasonably tending to establish plaintiff's cause of action alleged in his petition, and which should reasonably tend to support a verdict and judgment for plaintiff, defendant's demurrer to the evidence and motion for a directed verdict should be overruled'."

The record in the present action discloses in part that in December, 1950, the plaintiff below, Troy Robinson, entered into a verbal contract with Duncan Brothers, Skelgas dealers at Pawhuska to install certain Skelgas tanks and equipment in his cook stove so it would burn Skelgas in place of natural gas, the supply of natural gas being no longer available. Changes were made in the cook stove by the Skelgas dealer and a supply of Skelgas was connected to the stove by a copper tube extending from a Skelgas bottle located outside the wall opposite the stove and extending through the wall up to the stove. Mr. Robinson testified that after the change was made the stove popped and fluttered and didn't burn even; he also stated that after the fire which destroyed his property he observed the tops of the three bottles of Skelgas were blown out but the bottles were not burst; said he was not present when the fire destroyed his residence and contents. Mrs. Troy Robinson was the only person at home when the fire occurred about noon on March 4, 1952 and, in view of the contention made by plaintiff in error, we quote a portion of her testimony with regard thereto:

"A. I was in the living room.

"Q. Now, what was the first thing that attracted or called your attention to anything unusual? A. Well, it just all at once there was a flash of fire in the kitchen.

"Q. In the kitchen? From what portion of the kitchen? A. Over by the stove.

"Q. Where did you go? A. I run out of the front door first.

"Q. Then where did you go? A. I went back in through the living room and through the dining room and to the kitchen door * * *. I saw the table cloth on this little table was afire and also the curtains on both windows.

"Q. How long did you remain in the house? A. Not very long because it was smoking so and was so bad, and I was so excited I decided to try to get help.

"Q. What happened to your household goods and clothes? A. They all burned."

She answered in the affirmative when asked if she noticed anything unusual about the stove shortly after it was connected up.

"Q. Tell the court and jury what it was, please. A. Well, the burners if you would light them, they would burn awhile and then go to popping and then pop for about five minutes and then would just pop themselves out.

"Q. Did you report that condition to anybody? A. Yes, I did.

"Q. To whom? A. I went to the office and reported it to them and told them what it was doing.

"Q. What office do you mean, here in Pawhuska? A. Duncan Brothers.

"Q. Do you mean Duncan Brothers? A. Yes, sir.

"Q. Do you remember who you talked to? A. Yes, sir, I also reported it to one of the men that brought 'the bottles down there.

"Q. What did Duncan Brothers, the people in the office, tell you after you reported this condition the first time? A. They said some time when they were down there they would see into it.

"Q. Did they ever? A. No, they didn't.

"Q. What did the man say that you reported it to when he was replacing the bottles? A. I told him I thought I had a leak in the stove because I could smell it, and he said no I didn't because the bottle was almost empty and that is what I could smell.

"Q. Will you tell the Court and Jury how many times you reported this fluttering or popping? A. I did three times that I recall * * *.

"Q. When was the last time you reported it with reference to the fire? A. About five or six days before.

"Q. To whom did you report it then? A. I don't know which man it was because it was usually always a different man that brought the gas. It was when he brought the bottled gas is when I reported it.

"Q. What did you tell the man? A. That I thought I had a leak in the stove."

On cross-examination the witness testified in part that she had been ironing the morning of the fire, she had a pie cooking in the oven of the stove, which she looked at a few minutes before the fire; the fire was in the bottom of the oven; she opened only the top part and didn't see the flame.

"Q. Did you hear any explosion or large bang at the time— A. Well, it was a pretty loud noise all right, it was pretty—

"Q. Was that the one you described as fooshing? A. The fire was going, there was a noise, because part of the stove blew off and hit the cabinet.

"Q. What part was that? A. A long piece in front where the buttons are when you turn the fire on, which he had taken off when he changed the stove over, and there was supposed to be two screws, but he never put them back on, but the buttons did always hold it on there.

"Q. How do you know that was off? A. Because I saw it laying on the floor.

"Q. When was that? At the time of the fire? A. When I went into the kitchen.

"Q. Did you go into the kitchen? A. I went to the door.

"Q. When you came into the kitchen, I think you said the tablecloth was on fire and the curtains on the windows? A. Yes, sir * * *.

"Q. Did you see the actual start of the fire? A. Yes, sir.

"Q. Now, what did you see? A. I just saw the fire.

"Q. Was it just a flash and then gone? A. No, it continued there— I don't know because I ran out of the house.

"Q. How would you describe it? Was it running around the floor or in flames? A. Well, it wasn't exactly on the floor but it wasn't high either. It was just about the top of the stove is where it was at, and it seemed as though there was pockets of fire, the best I can remember after it was all over with. There was just pockets of fire about as high as the stove running over—

"Q. Over the Kitchen? A. Yes, sir."

Ruby Robinson, a daughter of the plaintiffs below, corroborated her mother's testimony to the effect that her mother told the man who came to deliver gas that she thought there was a leak in the stove.

Duncan Brothers were obligated to equip plaintiffs' stove so it would safely perform its purpose while burning Skelgas. The record discloses that they were advised that it apparently was not doing so, but took no action to remedy the same. There were established facts and circumstances, not inferences, from which the jury might reasonably conclude that the fire originated from a defect in the cook stove. It is suggested by counsel for the plaintiffs in error that the fire which destroyed plaintiffs' property may have originated from a number of possible circumstances, among the possibilities suggested was that the damage may have arisen from a propane gas line which had been installed about three weeks before the fire to supply fuel to the heating stove in the dwelling. It was testified that such line had no connection with the cook stove or the line supplying the fuel thereto and the line was not in use, or had been turned off from the stove in the living room some time prior to the time the fire occurred. The evidence and the inferences to be drawn therefrom were for consideration of the jury who had the right to determine and conclude that the injury came from defendants' negligence and not from some other cause. In Highway Construction Co. v. Shue, 173 Okl. 456, 49 P.2d 203, it is held:

"2. In a civil case all that the plaintiff is required to prove in order to establish causal connection between the defendant's negligence and plaintiff's injury is to make it appear more probable that the injury came in whole or in part from the defendant's negligence than from any other cause, and this fact may be established from circumstantial evidence."

Mid-Continent Pipe Line Co. v. Price, 203 Okl. 626, 225 P.2d 176, 178, holds:

"3. Where competent evidence is introduced on the question of negligence, from which reasonable men might draw different conclusions, it is one for the jury, and under like circumstances the question of proximate cause is one for the jury."

From all the facts and circumstances shown by the record we are unable to agree with plaintiffs in error's first proposition of error based on the assumption that there was no competent proof of causation.

The plaintiffs in error advance as their second point or ground for reversal of the judgment the proposition that there was no competent proof as to the amount of damages.

Troy Robinson, one of the plaintiffs below, testified to the size of his house and the dimensions of the rooms and other details about his dwelling which was destroyed, and stated that he gave $5,500 for the house.

The other plaintiff below, Dorothy Robinson, testified at considerable length as to the nature and value of the furniture, household goods and other contents of the dwelling and wash house, all of which were destroyed by fire. She testified that she and her husband bought the bedroom suites, that they were in good repair and condition, that she was familiar with the worth of such furniture, had seen furniture sold and had inquired as to prices; she fixed the value of the contents of one bedroom at $350, another at $405. She described the contents of other rooms, said the furniture in the living room was all new and that it would probably cost $500 to replace; she fixed the value of the kitchen and dining room contents and the value of the contents of the wash house, which was destroyed, and on the back porch at a total of about $1,650; said all the clothing of the four members of the family was destroyed, that she did not know the value of the clothing but estimated the value to be $1,800. No objection was made to the estimate by the witness. In McIver v. Katsiolis, 93 Okl. 49, 217 P. 422, 424, the opinion states:

"This court has repeatedly held that opinion evidence may be given as to the reasonable market value of articles in common use, such as household furniture and wearing apparel, and a citation of a long list of authorities would serve no good purpose."

And in the syllabus it is held:

"5. It is not improper to permit proof of the purchase price of an article purchased in the usual course of

trade, which has been used but a short time, as well as its condition at the time, and its salable value at the second hand dealer's, as elements for consideration of the jury in determining the reasonable market value of such article."

Merchants' Southwest Transfer & Storage Co. v. Campbell, 100 Okl. 226, 229 P. 542, holds:

"2. In an action to recover against a bailee for hire for loss of household goods where the goods have a market value, the measure of damages for such loss is the cash market value thereof, the cost of replacing such articles, where they are of common use, and where such articles have no market value, the measure of damages is the value of the goods to the owner; not any fanciful value which he might place upon them, but such reasonable value as from the nature and condition of the goods and the purpose to which they were adapted and used, they had to him.

"3. Negligence, and the value of property lost, by reason of same, are questions of fact, and when submitted to a jury under proper instruction, and there is any evidence reasonably tending to support the verdict of the jury, and the judgment of the court based thereon, the same will not be disturbed."

"4. Evidence of what an article sold for in a bona fide sale is relevant to prove value, and may be taken as sufficient to establish the market value, in the absence of other evidence." Wichita Mill & Elevator Co. v. National Bank of Commerce of Frederick, 102 Okl. 95, 227 P. 92, 93.

"3. 'Actual cash value' of building totally destroyed by fire is a matter of fact to be determined by a consideration of all relevant factors and circumstances existing at the time of the loss, and in the absence of affirmative proof of misconduct or lack of proper consideration, the jury's verdict, as to such value, based on competent evidence, will not be disturbed." Rochester American Ins. Co. v. Short, 207 Okl. 669, 252 P.2d 490, 491.

■ We conclude that there was competent evidence as to the value of the property destroyed sufficient to sustain the verdict and judgment thereon.

■ The third point or proposition presented by plaintiffs in error of their appeal is based on the action of the trial court in instructing the jury that they "may take into consideration all of the evidence admitted, whether upon the part of plaintiffs or the defendants" and further instructing that if the jury found from a preponderance of the evidence "whether upon the part of plaintiff or the defendants" the plaintiffs were guilty of negligence as alleged in the answer of defendants, then and in that event the verdict should be for the defendants. Counsel assert that it is improper to instruct on an issue not raised by the evidence and that reference to the defendants' evidence when there was none would probably confuse the jury and cause them to wonder if they missed some point. Reference in the instructions to the defendants' evidence, and to an issue of contributory negligence, when there was none, was improper, but it does not appear probable therefrom that the jury was misled thereby or that the verdict would have been different had such matter been omitted from the instructions. In the early case of City of Oklahoma City v. Meyers, 4 Okl. 686, 46 P. 552, 556, the opinion states:

"But, unless an appellate court can say that a trial judge has given instructions which are not applicable to the case, and which may have misled the jury, the cause should not be reversed. Before the party appealing can demand a reversal he must show his injury. It will not do to send a case back for new trial merely because the trial court may be technically wrong."

R & S Auto Service v. McGill, 205 Okl. 495, 236 P.2d 1089, 1090, holds:

"2. Errors in practice and procedure not affecting substantial rights of the parties are considered harmless on appeal."

We find no substantial error in the record which would justify a reversal of the judgment of the District Court and the same is affirmed.