F. M. KIRKHAM, *Appellee*, v. THE CITY OF KANSAS CITY, *Appellant*.

No. 18,199.

SYLLABUS BY THE COURT.

PERSONAL INJURIES—*Dangerous Approach to Sidewalk—Negligence for the Jury.* The testimony fairly tended to show: A sidewalk along the west side of Seventeenth street between Quindaro boulevard and Yecker avenue was laid twelve to eighteen inches lower than the surface of the ground on either side in order to bring it to the established grade. The parking extended five feet west to the street line. The walk had been in this condition for several weeks. A tent meeting had been in progress a short distance west of Seventeenth street for nine days or more, attended daily by from fifteen to seventy-five or a hundred persons. The weeds had been cut or topped, thus marking a route by which these persons . went from the tent to the sidewalk. While returning along this route with others from the services on the evening in question the plaintiff's wife fell upon the walk where such route entered the same from the parking on the west thereof, and was injured. No lights, barriers or other means had been provided by the city to protect against accident or injury at the place mentioned. *Held*, sufficient to go to the jury and to support a general verdict in favor of the plaintiff.

Appeal from Wyandotte court of common pleas. Opinion filed May 10, 1913. Affirmed.

R. J. Higgins, city attorney, and W. H. McCamish, assistant city attorney, for the appellant.

L. O. Carter, of Kansas City, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued the city for loss of his wife's services occasioned by an injury received by falling upon a sidewalk along Seventeenth street. A tent meeting was being held a short distance west of the street, and returning from services there on the evening in question the plaintiff's wife, in coming from the street line across the parking to the sidewalk, which was twelve to eighteen inches lower than the parking, fell thereon and was injured. The plaintiff recovered and the city appeals and presents the question whether the city owed any duty to the person injured.

It appears that before laying the walk it was necessary to make the depression in order to bring it to grade, and the real question is whether or not the city was liable for failure to guard or protect the place. A park-way of five feet was left between the west line of the street and the sidewalk. The walk had been laid a month or six weeks and the tent services had been held at least nine days when the injury was received. The plaintiff alleged that along the side of the walk weeds had been allowed to grow up and remain, and at the time so concealed the condition and lay of the ground and walk, there being no lights, guard rails, barriers or danger signals, that his wife was caused to fall. The wife testified:

"There was weeds there, had been cut—it seems that the tops had been cut off, but they were almost knee high, struck me along about here, I can remember along about there (indicating), and the dirt and the weeds seemed just to give way under my left foot and let me down on the sidewalk."

The defendant requested an instruction that if the jury were in doubt whether the accident occurred in the manner set forth in the petition, or in some other way, they should find for the defendant, which was refused. The testimony of another witness was that there was no pathway—"just simply cutting the weeds." The jury were instructed that if the condition of the sidewalk and the street adjacent was such as to be dangerous to a person lawfully using the same and had been so for such length of time that the city and its officers could and should have known thereof and negligently failed to remedy such condition, the city would be liable for an injury occurring to persons traveling or going on such sidewalk from another portion of the street, using reasonable care for their own safety; also that if there was a traveled way, public or private, from the lots adjoining on the west into the street sufficiently traveled to cause it to be commonly used for that purpose, which fact was or should have been known to the officers of the city, and they permitted such path to be without lights or danger signals to warn persons using such path, and the plaintiff's wife, using due care, was injured by the ground giving way beneath her feet causing her to be thrown to the sidewalk and injured, the city would be liable. It is complained that this brought into the case an element not found in the petition, and that it also assumed that there was a path. The petition did allege that the city knew or should have known "that persons were continuously passing along and over said points referred to and were liable to be injured thereby. Said City was careless and negligent in not having proper lights, barriers or danger signals or some other means there so as to properly provide for the safety of persons and pedestrians rightfully passing along and over said point and in allowing the weeds to grow up and remain along the sides thereof as aforesaid."

Whether the term point was intended to mean where

a path entered the sidewalk is doubtful—but it is fair to assume that persons "continuously passing along and over said points" would naturally cause a path to be worn or marked out there. The record contains sufficient evidence to show that quite a number of persons were passing along together when the injury occurred and the pastor testified that the attendance varied from fifteen to seventy-five or a hundred and "we cut some weeds directly east from the tent so that the people could see the way through them."

Another witness said:

"In coming from the tent to the sidewalk we passed through where the weeds had been cut off, but they were cut high;  .  .  .  The weeds were cut down to the sidewalk—that is, the tops were just simply whacked off; the pathway into the tent from the street was just simply cutting the weeds, there was no path."

The verdict then, is supported by proof that a route from the tent to the sidewalk over the five feet of parking had been marked by cutting the weeds, and was used by many persons and had been for nine days or more, and that where this route entered the sidewalk there was a perpendicular drop of twelve to eighteen inches, the place not being guarded in any way.

The city contends that it had a right to lay the walk on the grade of the street and that it was under no more obligation to protect the west line of the walk than the west line of the street, and owed no duty to guard or barricade for the benefit of persons coming from private property to the sidewalk. Authorities are cited to the effect that a city need not provide means of access from private property to its streets, and *Mulvane v. City of South Topeka,* 45 Kan. 45, 25 Pac. 217, is referred to as furnishing a similar rule in this state. It was therein decided that it is not the duty of a city to provide means of access from private property to its streets, nor liable for failure to guard its streets from approach at points where such approach is

dangerous. The reason stated was that the city has no control over adjoining private property. In *City of Olathe v. Mizee,* 48 Kan. 435, 29 Pac. 754, it appeared that the city had left uncovered over night an excavation twenty inches deep and twenty inches wide extending southward from the cross walk, and the plaintiff was injured by stepping aside to let others pass on the cross walk. It was held that she could recover, the city's duty being to maintain all parts of the street intended for travel reasonably safe. A distinction between cross walks and side walks was pointed out.

The case of *Langan v. City of Atchison,* 35 Kan. 318, 11 Pac. 38, involved this situation: A billboard negligently and imperfectly constructed on private property and partly supported by studding or uprights nailed to the sidewalk, and being so near to and adjoining the sidewalk as to be dangerously contiguous, was blown down by a strong wind, injuring the plaintiff. The city was held liable. The court said (p. 323) that the city owed the public the duty of keeping its streets and sidewalks in a safe condition for use in the usual mode by travelers and was liable for injuries resulting from the neglect to perform such duties. Certain provisions of the statute were quoted and it was said to be the duty of the corporate authorities to remove or abate any nuisance from the streets or sidewalks, and that under their power to remove nuisances and regulate structures projecting upon or adjoining the street or sidewalk they were bound to protect the walk in question from the imperfectly constructed and insecure billboard. It was said:

"We do not think it is very material whether the billboard was so close to and adjoining the sidewalk as to be dangerously contiguous thereto, or was actually supported by braces or uprights resting upon the south edge of the walk. The liability of the city would be the same in either case." (p. 324.)

The General Statutes of 1909 contain similar provisions relating to cities of the first class. The mayor and council have power to compel owners of property adjacent to walks and ways where dangerous to erect and maintain railings, safeguards and barriers along the same for the protection of the traveling public (§ 900) ; to regulate or prohibit structures projecting upon, over or adjoining a street or sidewalk, (§ 922) ; to require the cutting or destruction of all noxious weeds on lots or pieces of land and in the streets or alleys in front of or abutting upon any lot or piece of land (§ 923) ; to bring an action to enjoin and abate or prevent any nuisance within the city or within three miles of its corporate limits (§ 1056) ; to regulate the construction or erection of billboards, signs and other appliances on public streets and property adjacent thereto (§ 1248). It appears, therefore, that the city is clothed with ample power to protect or require the protection of its streets and sidewalks so that they may be reasonably safe for public travel. Among the numerous authorities holding it the duty of a city to guard against dangerous places outside the street line the following may be noticed: *The City of Delphi v. Lowery, Administratrix,* 74 Ind. 520, ruling that where there is a dangerous place in or near the usually traveled part of a street, the duty of the city is to use ordinary care to protect persons from injury who lawfully use the street in a reasonably prudent manner, and that "such duty is not fully discharged by making the travelled part of the street safe, but such measures as ordinary prudence requires must be taken to prevent persons, using ordinary care, from falling into dangerous places along the sides, or in close proximity to the termination, of the streets of the municipality." (Syl.)

Bigelow, C. J., in *Burnham v. City of Boston,* 92 Mass. 290, in holding the city liable to one who fell into

an excavation, entering the street over a commonly traveled way across lots adjoining, said:

"Certainly it can not be said that it is *per se* negligence for a person to enter from adjoining houses or lands on a defective and dangerous part of a way, who has no knowledge of the defect or want of repair, nor any notice that it had been closed against public travel by barriers erected in another place to prevent the use of the way by those coming upon it either in the line of direct travel or from intersecting streets. Nor can it be maintained that a city or town would in all cases fulfill the duty incumbent upon it by law by merely placing barriers across a street or way to protect travelers from injury by an existing defect or want of repair, without adopting any measure to guard against accident to those who might have occasion lawfully to come onto the dangerous portion of the way from private lands adjoining and lying within the limits which were closed against travelers approaching in other directions. . . . Nor is there any positive rule of law which requires a person to enter on a highway in any particular manner or at any fixed place, or which prescribes the exact mode in which he shall travel upon it. The right of a traveler to use it, and the duty of a city or town to protect him from danger and accidents, are regulated and measured by the same standards." (pp. 292, 293.)

*Bunch v. Edenton,* 90 N. Car. 431, involved the liability of a town to one who had fallen into a cellar excavation on a lot adjoining the street. It was held to be its duty to keep its streets and sidewalks in proper repair, which was said to imply:

"That all bridges, dangerous pits, embankments, dangerous walls and the like, perilous places and things very near and adjoining streets, shall be guarded against by proper railings and barriers.

"Positive nuisances on or near streets should be forbidden under proper penalties, and, when they exist, should be abated." (p. 434.)

In response to the argument that the excavation was

42—89 KAN.

not in the street and hence the town was not liable, the court said:

"This defence is not tenable. It was immediately along the side of the street and rendered it precipitous and dangerous. . . . The side of the street is a material part of it, and must be kept free from danger, however the same may arise, as well as other portions of the street. Pits and other dangerous places immediately adjoining it and near to it make it perilous, and such places are nuisances. When these are permitted to exist and the streets are not properly protected against them, the latter are not in reasonable repair." (p. 435.)

A very similar situation was considered in *Clark, By, &c. v. City of Richmond,* 83 Va. 355, 5 S. E. 369. The court said:

"And it is equally well settled that where the corporation permits an excavation to remain unfenced or without proper guards, in such close proximity to the highway as that one rightfully using it may without fault on his part, but as the result of an unintentional deviation or an accidental mistake, sustain injury by falling into such excavation, such corporation or city will be liable." (p. 358.)

It was said, however, that to render the city liable the excavation must be so near the highway that one false step might cause the injury, and that there would be no liability if the party must become an intruder or trespasser upon the premises of another. The same court in *Orme and Wife v. City of Richmond,* 79 Va. 86, had held the city liable in a case wherein the injury occurred by falling from an old, well-established and constantly used pass way leading into the street over an adjoining lot, over an eight-foot precipice left unguarded in lowering the grade of the street. In *Drew v. Sutton,* 55 Vt. 586, a town was held liable for an injury occurring by reason of an unguarded defect six inches outside of the highway. Kansas City was required to respond in damages to one injured by a fall

of a wall situated dangerously near the street, in *Kelley v. The City of Kansas,* 69 Mo. 102. (See, also, *Grogan v. The Broadway Foundry Company,* 87 Mo. 321.) In *Wiggin v. St. Louis,* 135 Mo. 558, 37 S. W. 528, it was held that a street which has a deep unprotected excavation along the line of its sidewalk is not reasonably safe for travel. A road so near a precipice that common prudence requires extra precaution to insure safety to travelers must receive such precaution by the municipality. (*Hey v. Philadelphia,* 81 Pa. St. 44; see, also, *Wellman v. Boro of S. Depot,* 167 Pa. St. 239, 31 Atl. 566, and *O'Malley v. Parsons Borough,* 191 Pa. St. 612, 43 Atl. 384.) In *Jewhurst v. City of Syracuse,* 108 N. Y. 303, 15 N. E. 409, liability was adjudged on the failure of the city to keep in repair that portion of a sidewalk which extended over the line and upon the land of a private owner. Peckham, J., in the opinion said:

"If the sidewalks outside of the limits of the street were dangerous, upon the facts in this case, because out of repair, I think the street itself may be said under the same facts to have been in a dangerous condition and that the city was liable, so far as this question goes, for injury arising therefrom." (p. 310.)

The reasoning of the court was that while the city had no right to go upon the adjoining land to repair that portion of the walk, it was still its duty to make its own part reasonably safe, "either by the erection of a guard or railing along the true limits of the street, or in some other way." (p. 312.) In *Sweet v. City of Poughkeepsie,* 89 N. Y. Supp. 618, the city was held liable for failure to guard its highway from a stump standing six inches outside the line. The supreme court of Oklahoma decided in *Oklahoma City v. Meyers,* 4 Okla. 686, 46 Pac. 552, that:

"Where a city negligently permits an excavation to be made, in such close proximity to a street as to endanger the traveling public, and a person, without

fault, is injured by falling into such excavation, a recovery may be had for such injury." (Syl. ¶ 2.)

There the excavation was on private property some six feet from the street line. A similar situation was considered, with a similar result, in *Town of New Castle v. Grubbs,* 171 Ind. 482, 86 N. E. 757.

"While a municipal corporation is generally under no obligation to guard dangerous approaches from private property to its streets, yet it is bound to provide guards or signal lights to prevent persons from receiving injuries in entering a street by a commonly traveled road, although such road is in fact a private way, and has never been laid out as a highway or street. There is no duty, however, to erect barriers or maintain lights to prevent injury to persons entering a street where there is no traveled way either public or private, and nothing to put the city on notice that such entrance is likely to be attempted." (28 Cyc. 1384.)

(See, also, 3 Abbott, Municipal Corporations, § 1007; 4 Dillon, Municipal Corporations, 5th ed., §§ 1696, 1717; 2 Elliott, Roads and Streets, 3d ed., § 790; 1 Harris, Damages by Corporations, § 103; Williams, Municipal Liability for Torts, §§ 94, 114-118; Jones on Negligence of Municipal Corporations, § 83; Morrill on City Negligence, pp. 70, 71.)

These citations are sufficient to support the doctrine that a city must use reasonable care to keep its streets and sidewalks safe for travel, the kind and degree of care and precaution differing with different circumstances and conditions. And, having full power to prevent or abate nuisances, it must use proper care to keep its highways safe although the peril consist of places or things not upon the street but dangerously near on private property. Indeed by no other rule would the public be safe in using the streets, for persons living or being in a city have the right to traverse its streets and sidewalks without being required to examine them and their surroundings to ascertain whether passage over them is likely to endanger life or

limb. This being true, by so much the more must the municipality guard dangerous places several feet inside the street line when there is reason to believe that numerous persons are using or likely to use the street in attempting to cross such places.

All that we need now to decide, however, and all that we do decide, is that the evidence was sufficient to go to the jury and to support the general finding in favor of the plaintiff, in view of the fact that the walk was some twelve to eighteen inches below the surface of the parking on either side; that it had been thus for several weeks; the street extended five feet west of the sidewalk so that the party was not injured by stepping immediately from private property to the sidewalk; the tent services had continued for such time and with sufficient attendance to warrant the jury in finding that the city ought to have known that from fifteen to a hundred persons were daily using a route from the tent east to the sidewalk and that they were likely to be injured unless the place was guarded in some way.

The judgment is affirmed.