No. 34,279

Velma Kaiser, *Appellee*, v. The City of Wichita, *Appellant*.

(90 P. 2d 1107)

Opinion filed June 10, 1939.

*Vincent F. Hiebsch, K. W. Pringle* and *Forest V. McCalley,* all of Wichita, for the appellant.

*Arnold C. Todd, Ralph Gore, Kurt Riesen* and *Julian E. Ralston,* all of Wichita, for the appellee.

The opinion of the court was delivered by

Hoch, J.: This was an action for damages against the city of Wichita, the plaintiff alleging that she was injured in a fall caused by a defective step on a stairway leading from a city bridge. The city demurred to the plaintiff's evidence and offered no evidence. The demurrer was overruled and the jury awarded the plaintiff $2,285. The city appeals.

The main question presented is whether under the facts and circumstances as shown the city was responsible for maintaining the stairway in a reasonably safe condition.

The bridge in question is the Douglas avenue bridge which crosses the Arkansas river in the heart of the city. It was built by Sedg-

wick county in 1908 under a special act of the legislature. Inasmuch as the bridge has been under the control of the city, which operates the street lights upon it and otherwise maintains it, there is no serious contention that the bridge is not to be considered as a city bridge.

About eight or ten feet north and a few feet below the city bridge was the bridge of the street railway company, and three or four hundred feet farther north was the bridge of the Arkansas Valley Interurban Company. Still farther north was a Missouri Pacific railroad bridge. At the time the plaintiff's accident took place there was a tract of land below and to the north of the city bridge, known as Ackerman Island, which divided the river channel. A baseball grounds was located on the island; and in 1912 persons interested in the baseball club which was patronized by the public generally, built a wooden stairway from the south end of the island tract up to the tracks of the street railway bridge and to the north level of the city bridge. The stairway rested on or against the city bridge. On the north side of the city bridge, and at the side of the regular walk for pedestrians was a heavy concrete rail. A gateway was made in this rail by removing the top part of the rail and the concrete spindles which supported it. At the bottom of the rail was a concrete base ten or twelve inches high and eight or ten inches wide which was not removed, and persons going through the gateway had to step over it. On a level with the sidewalk a platform was built which extended four or five feet north from the gateway, and from this platform there were three or four steps going down to another platform on a level with the tracks of the street railway. From that point there was a flight of twenty or more steps leading down to a platform which extended fifteen or twenty feet north to where it connected with a gravel path leading to the ball park. There were other approaches to the ball park on the island, but continuously from 1912 until plaintiff's accident in 1933, except possibly for a brief period, the steps were used both by passengers alighting from the streetcars and by pedestrians coming from or going to the city bridge.

On May 1, 1924, the city took fee title to the tract north of the city bridge, including the land on which the stairway was located, subject to the rights of way of the three railroads. In 1926 the city leased that part of the island on which a stadium had been erected to Frank Isbell, and upon expiration of that lease another lease was given in 1932, for a money consideration, to the Wichita Sports As-

sociation. During all the years from 1912 the tract was used by the public for baseball and other athletic purposes, and during those years the stairway was in public use. On the afternoon of September 24, 1933, plaintiff and her husband were on their way to attend a ball game and in company with others passed through the opening from the sidewalk on the bridge and down the stairs. When she was eight or ten steps from the bottom of the long flight the heel of her shoe caught in a hole or rotten place in one of the steps, she fell and suffered the injury. The issue being here upon demurrer to the evidence, the nature and extent of her injuries are not involved. Appellant does not attack the judgment on the ground that the award was excessive.

The city contends that it had no responsibility to maintain the stairway; that the wooden structure was erected by private parties for the convenience of their patrons and for their own profit in a private enterprise; that the stairway was not erected on city property, and was not a part of any public street or sidewalk.

The outstanding fact which confronts appellant's contention, and from which the record affords no escape, is that there existed for twenty years on the Douglas avenue bridge in the heart of the city, and over which hundreds of pedestrians passed daily, an opening or gateway in the substantial concrete rail which protected the main sidewalk; that connecting directly with this gateway, and on the level with it, was a platform and from the platform a stairway leading to the ball park; that for all those years this gateway and steps were used by the public in going to and from the ball games and other athletic events. There was direct testimony from the city engineer that city officials had personal knowledge of this opening in the rail and of the stairway and of its constant use by the public. But even in the absence of such direct testimony it would have to be said that the city had at least constructive knowledge of these facts which had been common knowledge for twenty years. For at least eight years out of the twenty the city had held the fee title to the land on which the stairway had been built, and for a number of years had maintained and beautified a small city park at the foot of the stairway and along the platform and path leading from it.

Formal dedication of land for street, alley or sidewalk purposes is not necessary in order to impose public responsibility in connection with its use as a public passageway. The mere use by the public, unattended by other factors, may not make a pathway or road-

way a public passageway and impose responsibility for it as such upon the city. But where there are attending facts and circumstances which show participating connection or acquiescence on the part of the municipality with such public use, and especially where such a situation has existed over an extended period of time, responsibility on the part of the city attaches. (7 McQuillin Municipal Corporations, 2d ed., 82; 43 C. J. 990, 992; *Hendrickson v. City of Astoria,* 127 Ore. 1, 267 Pac. 1035; *Cemetery Ass'n v. Meninger,* 14 Kan. 312; *Kirkham v. Kansas City,* 89 Kan. 651, 132 Pac. 160; *Jewhurst v. City of Syracuse,* 108 N. Y. 303, 15 N. E. 409; *Raymond v. Wichita,* 70 Kan. 523, 79 Pac. 323; *Aston v. Newton,* 134 Mass. 507.)

In the case before us there was long acquiescence by the city in the public use of the gateway and the stairway. The gateway was an open invitation to use the stairway upon which it opened. The opening in the concrete rail had no other purpose. If the city desired to accept no responsibility for use of the stairway it had the right to close the gateway and, if necessary, remove the stairway. But it could not permit the gateway to exist for many years with its continuing invitation to use by the public and then escape all responsibility to those who used it. It must be remembered that we are not here passing upon questions of fact considered by the jury, as to whether the stairway was in reasonably safe condition, or whether defects, if any, were so discernible as to call for repair, or upon any question of contributory negligence. The city stood upon its demurrer to the evidence and denies any responsibility for the condition of the stairway. We think that the demurrer was properly overruled.

The city offered no objections to the instructions and asked for no special instructions, but in the motion for a new trial simply alleged erroneous rulings and instructions.

In its brief the city complains of instructions 2, 8 and 9. The abstract does not show instruction No. 2, but appellant says that the jury was therein instructed that the manager or owner of any amusement park 400 feet away from a private walk was responsible for the safety of ingress and egress to the stadium. Assuming as we do that appellant accurately quotes the instruction, we find nothing in it to prejudice the rights of appellant.

Appellant states in its brief that in instructions 8 and 9 the court instructed the jury that "in all cases where a well-traveled pathway

or lane connects two pieces of municipal property then the city is liable for all defects upon such property." While appellant's statement was doubtless intended to be merely argumentative, we do not find that the statement is justified from the reading of the instructions themselves. In No. 8 the court instructed the jury in effect that the stairway in question was erected by the athletic club against the bridge which was under the control of the city, that an opening was made from the bridge onto the stairs by persons other than the city, but regardless of whoever made the opening, the bridge with its opening and the stairs were used commonly for about twenty years by people going to and coming from the park, and that after so long a usage it must be presumed in law that the owner, management, and possibly both, of the amusement park and stadium were responsible for the safe condition of the passageway. We see nothing in that instruction to prejudice the rights of the city.

In instruction No. 9 the court instructed the jury in substance that the city was under a duty to exercise ordinary care to keep the stairs in question in a reasonably safe condition, but that the city was not an insurer of the safety of persons using the stairway and could not be held liable unless it failed to exercise such reasonable care; that if the jury found from a preponderance of the evidence that the plaintiff caught the heel of her shoe in a defective place on the stairway and as a result fell and sustained injuries, she still could not recover against the city unless the jury found that such alleged defect or defects were either actually known to the city through its officers or agents or that such defect or defects had existed for a period of time sufficient in the opinion of the jury to have become known to such officers or agents whose duty it was to look after the condition of the stairs and public ways of said city if they had been acting in the exercise of ordinary care. The court stated further that such latter condition would constitute so-called "constructive knowledge" and would be as sufficient as actual knowledge in determining the right of an injured party to recover. Certainly this instruction does not say, as appellant contends, that a city would be liable for defects "in all cases where a well-traveled pathway or lane connects two pieces of municipal property."

The city also alleges that the court erred in admitting as exhibits certain photographs upon which certain words had been written. The record shows, however, that only the pictures themselves, and not the words, were offered and received in evidence, and in any

event it cannot be said that the presence of the words in question constituted prejudicial error. The words written on the top of the exhibits were as follows: "Marks step from which she fell," "Arrows showing eighth step up from which she fell," "X shows landing where she fell from eighth step." Appellant is not here contending that contrary to the evidence the jury found any facts upon which these words would have any bearing.

The judgment is affirmed.