## MARY E. WARNER *vs.* INHABITANTS OF HOLYOKE.

The construction of a railroad upon a highway in such a manner as to exclude public travel therefrom, and the making of a new way fit for public travel, at the side of the railroad, connecting those portions of the highway not occupied by the railroad, are facts which, in an action against a town to recover for damage alleged to have been caused by a defect in the highway, will warrant the jury in inferring a location of the railroad which discontinues that portion of the highway occupied by the railroad.

A town is not bound to erect a barrier or railing merely to prevent passengers from straying from the highway, where no dangerous place is in such close proximity to the highway as to make travelling on the highway unsafe.

In an action against a town to recover for damage alleged to have been caused by a defect in a highway, the damage having been sustained at a dangerous place several feet outside of the limits of the highway, the question whether the dangerous place was in such close proximity to the highway as to render the use of the highway unsafe for the purposes of travel may properly be submitted to the jury as a question of fact.

At the trial of an action against a town to recover for damage alleged to have been caused by a defect in a highway, the jury having been instructed that towns are not obliged to erect barriers to prevent or warn travellers from straying from the highway where there is no dangerous place within such close proximity to the highway as to render the use of the highway, for purposes of travel, unsafe, were further instructed that by proximity to the highway was meant proximity to the highway as travelled and used. *Held,* that such further instruction was correct.

By Gen. Sts. *c.* 43, § 83, a town is not authorized to close a private way leading from a highway into the grounds of an adjoining proprietor, neither is it made responsible for damage caused by a defect in such private way.

TORT to recover for personal injuries alleged to have been caused by a defect in a highway in the defendant town.

At the trial in the Superior Court, before *Brigham*, C. J., the plaintiff offered evidence tending to show that on the evening of September 21, 1871, she was riding with her husband and his sister, on their way from Springfield to Easthampton, in a carriage drawn by a span of gentle horses driven by the plaintiff's husband, Albert Warner; that the night was dark and cold; that when they were nearly opposite the Ingleside Hotel, at a point a

few feet southerly from a well, and driving in a northerly direction, the horses stopped of their own accord, that Mr. Warner alighted and went to the horses' heads, and there found two lengths of fence in front of the horses across the road at right angles to the line of travel, but so placed as to afford sufficient space for a team to pass in the road at the end of the fence; that the carriage was then on hard, level ground, and apparently in the travelled path; that with the intention of driving back a few rods, to take another road which also led to Easthampton, he turned the horses around by the bits, got into the carriage, and drove back in a southwesterly direction, when the carriage overturned upon its left side, falling towards the east, down a bank; that the occupants were thrown violently on to the ground, and that the plaintiff was severely injured.

It appeared that the scene of the accident was upon a hill side; that an ancient highway of the defendants, which it was conceded at the trial they were bound to keep in repair, was located west of a well, which stood in a lot east of the easterly fence of the highway and about two rods from it · that south of the well the highway bowed a little to the east; that the Holyoke and Westfield Branch Railroad had, at the time of the accident, built its road-bed over a portion of the travelled path of the highway at or near where the accident occurred, and that a new road had been worked further to the east than the highway, straightening the bow therein; that the worked road was not fenced on either side, and was unfinished, but level and in a passable condition; that work on it was being done daily; that there was a way made, leading from the newly made road up the hill over the railroad to the Ingleside Hotel, which way was entered by two branches, built up over a mound; that this mound was about eleven feet high from the level ground at its eastern base, with a precipitous easterly front, and so constructed that a team could pass up one branch of the way and down the other without crossing the railroad track; that when the plaintiff's carriage tipped over, the horses and carriage had proceeded, at a walking pace, a few feet up the northerly branch; that the left wheels of the carriage were on or very near the edge of the easterly face

of this branch when it went over; that the bank caved and carried some earth down with it; that there was no railing where the carriage went off, and no light or notice or other warning of danger; that the way at the place of the accident had been in its then condition for more than twenty-four hours, and that plaintiff was in the exercise of due care.

The defendants called Lewis F. Root, who testified that he was the chief engineer in constructing the railroad; that the railroad is about twelve or fourteen feet above the travelled part of the road below; that in building the railroad they dug away a former driveway of Mr. Davis, or part of it, and it was necessary for them to build 'the driveway that the plaintiff went off, to accommodate Mr. Davis; that the driveway and slope were originally within the location of the railroad; and that the roadbed was substantially completed at the time of the accident. There was also evidence in the case, relied upon by the defendants, tending to prove that the place of the accident was without the limits of the highway and within the location of the railroad as made in 1871, and that there was a new highway, of sufficient width and free from defects, affording safe travel, east of the slope extending to Ingleside, and that the old highway had been practically abandoned.

The chief justice directed the jury to answer the following questions, whichever way their verdict should be, namely:

" 1. Was the injury of the plaintiff from a cause within the limits of defendants' highway?

" 2. If the injury of the plaintiff was from a cause without the limits of defendants' highway, how far had plaintiff proceeded (after leaving the highway) upon the location of the railroad, or upon the private way of the Ingleside Hotel, before she encountered the cause of injury? "

To the first question the jury answered, "No"; to the second, " Fifteen feet."

The plaintiff's counsel asked for the following instructions: " 1. If the place where the accident occurred was not within the limits of the highway, but upon a private way, and such way entered on and united with an existing public highway, and the

same was not closed up by the selectmen, or the public by other means cautioned against entering upon such way, or any notice given that the same was dangerous, then the plaintiff can recover, provided the jury are satisfied that the private way was defective, and that the defect caused the injury, and that the plaintiff was in the exercise of due care.

" 2. If the injury occurred within the old travelled path of the old highway, which had not been discontinued, although a new way had been worked but not completed, adjacent to such old way, and the injury occurred by reason of a defect in such old travelled path, and the plaintiff was in the exercise of due care, she can recover.

" 3. The town may be liable for the injury resulting to the plaintiff from a defect in the highway, although the defective place is within the location of a railroad."

The court declined to give these instructions as prayed for, and submitted the case to the jury upon the questions whether the alleged defect was within the limits of the highway, practically existing, and if not within the limits, whether it was in immediate proximity thereto, and gave the following instructions :

" Towns are required to keep the highway, situated within their limits, in repair, so that the same may be safe and convenient for travellers, with their horses and carriages, at all seasons of the year; as a part of this obligation they are bound to erect suitable railings, or barriers, where a dangerous place exists in such close proximity to the highway as to render the use of the highway, for purposes of travel, unsafe. But they are not obliged to erect barriers to prevent or warn travellers from straying from the highway where there is no dangerous place within such close proximity.

" If the plaintiff left the limits of the highway, and proceeded for a distance of twenty feet on a private way, and there received her injury from a dangerous place without the highway, the place of injury was not in such close proximity to the highway as to make travelling on it unsafe, and for an injury received under such circumstances, plaintiff could not recover.

" If the place of the accident was within the limits of a rail-road, then substantially constructed, and upon a portion of such limits, which, by an arrangement of a person owning land adjacent thereto, was arranged as a private way over said limits, for the convenience of that person, it would not be within the limits of the highway; notwithstanding the place of such accident was within the limits of and crossing a former highway which had not been formally discontinued."

To these instructions the plaintiff excepted.

The jury, after being out some time, returned and asked the following questions:

" The jurors respectfully request your honor to again define the law in regard to the effect of location of railroads upon highways, and would such location work a discontinuance of a highway?

" Also the law in regard to the liability of towns for damage from accident occurring beyond the strict limits of a highway.

" Also, in speaking of proximity to a highway, do you mean proximity to the strict line or limit of such highway, or proximity to the line of travel, or that part of such highway as is worked?"

The court ruled as follows: " The substantial construction of a railroad upon a former highway of the defendants, excluding public travel thereon, accompanied by the making of a new way beside the said railroad extending to and meeting the former highway, where the same was not occupied by said railroad, would be facts, warranting the inference of a location of the railroad, which discontinued so much of the highway as it covered.

" By proximity to a highway, the court means, proximity to the highway as travelled and used for the public travel."

The jury returned a verdict for the defendants, and the plaintiff alleged exceptions.

*W. G. Bassett*, for the plaintiff.

*W. B. C. Pearsons*, for the defendants.

Ames, J. It was correctly ruled at the trial that " the substantial construction of a railroad upon a former highway of the defendants, excluding public travel thereon, accompanied by the

making of a new way beside the said railroad extending to and meeting the former highway, where the same was not occupied by said railroad, would be facts warranting the inference of a location of the railroad, which discontinued so much of the highway as it covered." At the argument it was assumed that the railroad was duly chartered, and rightfully laid out. The new way lying east of the railroad superseded and took the place of so much of the old highway as was included within the limits occupied by the railroad. The case finds that this new way upon which the plaintiff was travelling was in a level and passable condition, and that the accident complained of happened outside of the limits of this new way, and within the limits of a carriage track or path leading from the highway, across the railroad track, into the grounds belonging to and occupied by the proprietor of a public house, known as the Ingleside Hotel. In this state of facts, the jury were properly instructed that although a town is bound to erect barriers or railings where a dangerous place is in such close proximity to the highway as to make travelling on it unsafe, it is not bound to do so where there is no such close proximity to a dangerous place, merely to prevent travellers from straying from the highway. They were also instructed that if the plaintiff left the limits of the highway, and proceeded twenty feet on a private way, and there came upon a dangerous place and was injured, there was no such close proximity to the highway as to make it unsafe, and to render defendants responsible. The law has nowhere undertaken to define at what distance in feet or inches a dangerous place must be from the highway, in order to cease to be in close proximity to it. It must necessarily be a practical question, to be decided by the good sense and experience of the jury. A perpendicular wall by the roadside, or a fence, or under some circumstances a post or a tree, might properly stand very near the travelled path, without being a defect or an obstruction or rendering the highway unsafe. In this case the jury have found that the cause of the accident was fifteen feet from the highway, and under the instructions given them must have also found that it was not sufficiently near to it to render travelling upon it unsafe. *Adams*

v. *Natick,* 13 Allen, 429. *Murphy* v. *Gloucester,* 105 Mass. 470. *Marshall* v. *Ipswich,* 110 Mass. 522. The plaintiff has no ground of complaint against these instructions ; and the ruling that the proximity in question means " to the highway as travelled and used," was also correct.

The provision of Gen. Sts. *c.* 43, § 83, making it the duty of towns to close up ways opened and dedicated to public use entering upon and uniting with public ways, would not authorize the defendants to close a private way leading from the highway into the grounds of an adjoining proprietor, nor make them responsible for its condition.                      *Exceptions overruled.*