LOLA SPARKS, PRO AMI., RESPONDENT, v. KANSAS CITY, MISSOURI, A MUNICIPAL CORPORATION, APPELLANT.—160 S. W. (2d) 819.

Kansas City Court of Appeals. March 2, 1942.

*Homer A. Cope, Cope & Hadsell, Mrs. Sylvester Wells* and *Walter A. Raymond* for respondent.

712

*William E. Kemp* and *James Patrick Quinn* for appellant.

CAVE, J.—This is an appeal by the city from a jury verdict and judgment thereon awarding plaintiff damages in the sum of $1500, resulting from injuries suffered when an automobile in which she was riding was driven from the traveled portion of a public street and over a precipice under the circumstances hereafter detailed.

For convenience, the parties will be referred to as plaintiff and defendant.

Defendant urges error because the court refused its demurrer at the close of plaintiff's evidence and at the close of the case; (a) because the evidence did not sustain proof of the negligence alleged; (b) because no notice of the accident was given to the city as is required by Section 7636, Revised Statutes Missouri 1939.

The petition, after stating the topographical and weather conditions at the time and place of injury, charges defendant with negligence, as follows:

"Plaintiff further states that all of the aforesaid injuries and injurious consequences were directly caused by the negligence of the defendant in this, to-wit:

"That although the defendant maintained said playground and tennis courts in said Roanoke Park on a level approximately 30 to 40 feet below said Valentine Road and the projection beyond the same and at a point a short distance north of said Valentine Road where it curved sharply to the left, and the defendant knew, or, by the exercise of ordinary care and caution could have known before the date complained of herein that without any fence, barricade, or warning sign to indicate said conditions to, or protect persons traveling

beyond said highway and therefrom, that by reason of the proximity of said playground and tennis courts in said park and projection beyond said highway and difference in grade, as well as the curve at said place in Valentine Road, as aforesaid, automobiles traveling thereover were likely to pass over and beyond the edge of said highway and onto said projection, and fall to said play-ground and tennis courts below, and the occupants thereof likely to be injured, yet, nevertheless, defendant negligently and carelessly failed to provide any fence, barricade or warning sign to indicate the conditions aforesaid, or protect persons traveling beyond said highway therefrom and onto said projection, and have thus and thereby prevented said automobile going over and beyond said projection with resultant injuries to plaintiff as aforesaid.''

Defendant's answer denies generally the averments of the petition, and pleads that no notice was given as required by Section 7636, *supra*, and certain acts of contributory negligence.

The evidence discloses that the plaintiff was injured on the night of December 28, 1937, and did not bring her suit until June 15, 1939. It is conceded no notice was given to the city concerning the accident prior to the filing of the suit. It is plaintiff's contention that none was necessary.

From the evidence and the original exhibits on file in this court, we conclude the street locations and topography to be as follows: Valentine Road is a public street in Kansas City, with an 18 foot improved paved roadway. At a point less than one block southeast of the point of accident it intersects Roanoke Road which runs generally east and west. From that intersection Valentine Road goes upgrade and curves slightly toward the northwest with a rock wall along the north and northwest edge thereof from the intersection to a point where the street makes a sharper curve to the west. At that point the rock wall stops for a distance of 103 feet around this sharper curve and begins again and extends on westward. The accident occurred on the curve and through the breech in the rock wall. The street and walls had been in such condition since construction in 1909. Adjoining Valentine Road on the north and west is a public park and playground owned and maintained by the city. At the curve in the street and along where there is no rock wall, the distance from the edge of the pavement to the edge of a precipice is from 25 to 27½ feet at right angles. From the top of the precipice to the playgrounds below is approximately 30 feet. There was no curbing, ditch, gutter or sidewalk along the north or west edge of Valentine Road at the point of the accident. The surface of the street and the surface of the land between the street and the precipice are approximately even and level. The space between the pavement and the precipice was seeded with grass and was owned by the city. At the top edge of the precipice there was some small shrubbery, and at

the foot of the precipice there were some large trees, the tops of which extended considerably above the top of the precipice.

On December 28, 1937, about 12:30 A. M., plaintiff was riding in a Ford V-8 Coupe automobile being driven by one Straton. There were four people in the seat. The car was being driven in a northwesterly direction along Valentine Road toward the precipice above mentioned and at about 15 miles per hour. The night was dark and foggy and the two headlights and two fog lights were in operation on the car. The occupants could not see more than 20 to 30 feet ahead of the car. Wayne Straton, the driver, was not available as a witness because he had joined the United States Navy prior to the trial. The other occupants of the car testified in substance that as they approached the sharper curve they could see the stone wall to their right but when it ended, just short of the sharper curve, the condition gave the impression that the street forked and that the part they were driving on went straight ahead. When the car left the pavement there was a slight jolt and then it traveled diagonally across the open space for a distance of about 45 to 50 feet and plunged over the precipice, resulting in injury to the plaintiff.

The issue submitted to the jury was the city's negligence in maintaining the conditions above described without placing a fence, barricade or warning sign either at the edge of the paved road or on the projection of land between the edge of the street and the precipice.

We will confine our discussion to the point raised by the defendant on this appeal. On its first point, that the evidence did not prove any negligence on the part of the city, its position is stated in the following language:

"The automobile in which plaintiff was riding left the street and traveled a distance of from forty-five to fifty feet before it went over the cliff.

"A municipality is not liable for neglect to guard or place lights around dangerous points of a highway or to furnish suitable barriers except where it is necessary for the safety of travelers using the highway in a careful and ordinary manner. It is not the duty of the municipality to fence its streets or roads nor to provide barriers merely to prevent travelers from straying off the highway."

The basic negligence pleaded and relied on by plaintiff is that the city knew or by the exercise of ordinary care and caution could have known that automobiles traveling along Valentine Road at the point of accident were likely to leave the traveled portion of said road or street and go onto and across the land between the street and precipice and fall to the playgrounds below; and, therefore, the city should have provided a fence, barricade or warning sign to indicate the conditions and protect persons so traveling beyond said street.

To support its contention the city cites and relies upon the following cases: Clinkenbeard v. City of St. Joseph. 10 S. W. (2d) 54,

321 Mo. 71; Bassett v. City of St. Joseph, 53 Mo. 290; Fox v. City of Joplin, 297 S. W. 449; Chance v. City of St. Joseph, 190 S. W. 26.

In passing on the question of whether the court committed error in overruling defendant's demurrer to the evidence, we recognize the established rule in this State that such a demurrer "admits as true every fact and circumstance which plaintiff's evidence tends to prove; that plaintiff is entitled to the benefit of every inference of fact which may reasonably be drawn therefrom; that the evidence must be considered in the light most favorable to plaintiff; . . . and that such a demurrer can be sustained only when the facts in evidence and the legitimate inferences to be drawn from such facts are so strong against plaintiff as to leave no room for reasonable minds to differ." [Cento v. Security Bldg. Co., 99 S. W. (2d) 1, l. c. 5; Young v. Wheelock, 333 Mo. 992, 64 S. W. (2d), 954.]

It appears from the record that the rock walls were located approximately along the property line of the street and that the land to the north and west of such rock walls was park property belonging to the city and used for tennis courts, playgrounds, etc. The precipice referred to in the evidence was not made by the city in constructing the street or in improving the park property, but was the natural contour of the land. The conditions existing at the time of accident, the location of the stone walls, the precipice and the park, had so existed for approximately 28 years. There is no complaint by plaintiff of the surface of the 18-foot pavement or the part of the street which had been improved for public use, but she does complain that the sharp curve in the street and with the land practically level with the street projecting to the north and west from such curve would, on a dark and foggy night, create an illusion that the street proceeded straight ahead and did not curve and, therefore, the city should have erected a fence, barricade or warning sign to indicate the curve and to protect persons from traveling beyond the improved portion of the street and thereby driving over the precipice.

It is well settled in this State that a city has the right to improve and open for public travel only a portion of a platted street, and that a city is not liable for injuries to persons using a portion of the street which the city has not undertaken to improve and to open for public use as a pathway or roadway, although such injuries may be caused by dangerous defects therein. [Clinkenbeard v. City of St. Joseph (Mo.), 10 S. W. (2d) 55; Griffin v. City of Chillicothe, 311 Mo. 648, 279 S. W. 84.]

We believe the opinion of the Supreme Court in the case of Clinkenbeard v. City of St. Joseph, *supra*, is decisive of the point in this case and is binding on this court. The facts in that case are set out in great detail and we will not undertake to repeat them here, but, briefly, the situation which the court had under consideration was that the plaintiff, on a dark and rainy night, was driving his auto-

716

mobile on an improved street and at a certain point or intersection with another street, there was a "jog" or offset of some 10 or 12 feet in the street which plaintiff traveled and in the corner of that offset there was a light pole located some two or three feet inside the parkway between the curbs of the improved part of the street. Because of the rain and darkness the plaintiff did not detect the condition and drove his automobile over the curb and struck the light pole, resulting in injury. The charge of negligence against the plaintiff and the Light Company, the owner of the pole, was as follows:

"Said defendants knew, or in the exercise of ordinary care should have known, of such condition and the dangerous and not reasonably safe condition of said pole being located in said street under such conditions and of its abandonment and that by reason thereof said street at such place was dangerous and not reasonably safe for public travel, in ample time, prior to the 19th day of August, 1925, that the same could and should have been removed or guarded or lighted and rendered said boulevard in a reasonably safe condition for public travel prior to said date."

The Supreme Court, after reviewing many authorities of this and other states, held that the city was not negligent, and that the demurrer to the evidence should have been sustained. In so holding, the court said:

"The city was not required, as shown by the authorities above cited, in the exercise of its governmental function and discretion, to remove the parkway and to widen the roadway for vehicular travel, and it is not actionably liable for its failure so to do. *Neither do we think that defendant city is chargeable with actionable negligence in failing to maintain a barrier, warning sign, or reflector on the parkway in question.* In almost every city of size in the state, some streets and traveled roadways are laid out and improved without uniformity as to width of roadway *or direction*; that is to say, 'jogs', 'goosenecks', and cul-de-sacs are of more or less frequent existence in all of the cities of the state, especially in residential districts; and to judicially say that, at every such place, a municipality must maintain some barrier or warning device, is more than we think the law requires."

In the case of Fox v. City of Joplin, 297 S. W. 449, 451, the Springfield Court of Appeals announces the rule which we think is also applicable to the matter under consideration. The court said:

"The duty to guard and warn against things extraneous to the sidewalk does not arise until the object of danger is so near the sidewalk as to be dangerous to those *on the sidewalk.*" (Italics ours.)

To the same effect, is the holding of the Supreme Court in Bassett v. City of St. Joseph, 53 Mo. 290, 298, wherein the court said:

"In all such cases, the question is a question of negligence, or no negligence, on the part of the city authorities, and this will depend on the other question, whether it was, under the circumstances of the

case, the duty of the city to guard travellers against the danger. *If the excavation being outside of the street did not render it dangerous to travel, and the highway still remained reasonably safe to travellers, it would not become the duty of the city to place either guards or other protection, to prevent persons from falling into the excavation*; and of course, no negligence could be imputed; but whenever it begins to be the duty upon the part of the city to afford protection, then a neglect to perform the duty will create a responsibility upon the part of the city to those who may receive injury in consequence of such negligence, whether the injury is received by falling into an excavation that is in the street, or so near to it as to render it *dangerous to those who travel upon the highway.*'' (Italics ours.)

We think the above rules apply here. It cannot be said, and we are unwilling to hold, that the city must be charged with the knowledge that a pedestrian or an automobile driver on the street or sidewalk will leave the well defined improved part of the street or sidewalk which has been set aside by the city for use and wander off on property or in territory which the city has not designated and prepared for travel; and that the city should be required to erect fences, barricades or signs to prevent such wandering. There is no state statute or city ordinance, of which we have any knowledge, making such requirement and we do not believe the common law makes any such requirement.

The rule announced by the Supreme Court in the case of Clinkenbeard v. City of St. Joseph, *supra,* and the opinions quoted above, distinguish them from that line of cases wherein a dangerous excavation or other defect has been permitted to exist so close to the traveled portion of the street or sidewalk as to endanger usage thereof, while using the same in the ordinary manner and for the purpose for which said roadway or sidewalk was intended and improved. We do not consider such cases in point. Some of such cases are: Kiley v. Kansas City, 87 Mo. 103; Campbell v. City of Chillicothe, 239 Mo. 455.

The plaintiff does cite and quote from the cases of Johnson v. State, 173 N. Y. S. 701; Lendrum v. Village of Cobleskill, 183 N. Y. S. 215; Ross v. State, and Dagett v. State (N. Y.), 193 N. E. 420; Louisville & N. R. Co. v. Hadler's Admr., 269 Ky. 115, 106 S W. (2d) 106. Those cases do lend support to plaintiff's contention in this case and are very persuasive, but we cannot reconcile the ruling in those cases with the decisions of our courts quoted *supra.* While those decisions are persuasive, we must follow what we understand the law to be as declared by our Supreme Court.

Plaintiff cannot successfully claim that the city should have erected a fence, barricade or warning sign to direct traffic around the curve because such would be a governmental function for which the city would not be liable. [Carruthers v. City of St. Louis, 341 Mo. 1073, 1083, 111 S. W. (2d) 32; Prewitt v. City of St. Joseph, 334 Mo.

718

1228, 70 S. W. (2d) 916; Auslander v. City of St. Louis, 332 Mo. 145, 56 S. W. (2d) 778. These cases also declare certain general principles of law concerning the liability of municipalities for the construction and maintenance of streets which we think support the conclusion reached herein.

The plaintiff also contends that the casualty occurred on park property after the automobile had left the street and that any negligence of the city in maintaining its park property was at least concurring negligence for which it would be liable. There is no merit in that contention. The city had made no effort to improve or open that part of its park property for vehicular travel and would not be liable to a person driving thereon. [Clinkenbeard v. City of St. Joseph, *supra*; Griffin v. City of Chillicothe, 311 Mo. 648, 279 S. W. 84.]

Since we conclude the court should have sustained defendant's demurrer to the evidence, we need not pass on the question of no written notice being given. For the reasons above assigned, the judgment is reversed. All concur.