GLADYS S. NICHOLSON, administratrix cum testamento annexo of
estate of WINFRED VINCENT, appellant, v. CITY
OF DES MOINES, appellee.

No. 48317.

(Reported in 60 N.W.2d 240)

September 22, 1953.

Rehearing Denied December 18, 1953.

Dickinson, Throckmorton, Keir, Parker & Mannheimer, of Des Moines, for appellant.

John A. Blanchard, Harris M. Coggeshall and Frank D. Bianco, all of Des Moines, for appellee.

Oliver, J.—Plaintiff's decedent, Winfred Vincent, aged seventy-two years, was a carpenter by occupation. The petition alleged he died from injuries caused by his falling into a pit at the northwest corner of the bridge spanning Four Mile Creek on Easton Boulevard between East Thirty-sixth Street and East

Thirty-seventh Street, Des Moines; that immediately prior to falling into the pit, decedent was walking east on a cinder covered path maintained by the City along the north side of Easton Boulevard, which path led directly to a walk for pedestrians at the north side of the bridge; that his death was caused by the negligence of the City in failing to maintain a barrier or railing and a street light at the place and give warning of the pit.

Defendant's motion for directed verdict was sustained. The main question here is whether there was sufficient evidence of negligence of the City to require the submission of that issue to the jury. Under the rule applicable in such cases the evidence will be considered in the light most favorable to plaintiff.

Mr. Vincent's body was discovered in the pit, March 25, 1952. He was last seen alive shortly after 11:30 p. m., March 24, by the driver of a curbliner bus which had transported decedent from downtown Des Moines to the bus terminal at East Thirty-third Street and Easton Boulevard. From that point decedent had frequently walked east on Easton Boulevard about three city blocks to and across the bridge, and several blocks farther to his home. For the first two blocks east of the bus terminal there was a cement sidewalk along the north side of Easton Boulevard. Between the east end of this sidewalk and the pedestrian's lane on the north part of the bridge, a distance of approximately one block, the sidewalk maintained by the City was a cinder path several feet in width, without definite margins. Photographs show this cinder path was rough and somewhat irregular. At the corners of the bridge were concrete extensions of side rails, about twelve feet long, which flared outward several feet. For most of its distance the east and west cinder path ran on a line which would have carried it some feet north of the north edge of the bridge and abutments and into the pit. As it neared the bridge the cinder path curved to the south, ran inside the concrete railing and connected with the sidewalk on the north part of the bridge. The bridge is a few feet south of a bridge it replaced. A witness testified: "When the old bridge was there we had a cement sidewalk then leading all the way to the old structure * * *. At that time the cement sidewalk led directly to the north side of the old structure. The sidewalk was

straight." The City made the curved cinder path as the approach to the new bridge which was constructed about 1943 or 1945.

The pit or hole was in the west bank of the creek. Apparently it had been formed by the washing away of the soil by the discharge of water from an eighteen-inch concrete pipe installed by the City to carry surface water from a ditch on the south side of the cinder path. This drain pipe passed underneath the cinder path and through the west bank of the creek. Since about 1943 or 1945 the washing away of the soil by the water discharged by the pipe had caused the pit or hole to encroach upon the west bank of the creek a few feet farther (west) and the end (east) section of the drain pipe had become exposed and unsupported and had fallen off. This disconnected section, several feet long, had been lying in the bottom of the pit for some years. The walls of the pit were precipitous. Its depth was estimated at ten to fifteen feet, its width eight feet. Glenn Davis testified the west edge of the pit was ten or twelve feet west of the west end of the bridge. The pit was in line with the cinder path, before the path turned into the bridge. This would locate it within the line of the street but outside the traveled portion thereof.

Exhibit E is a photograph taken the morning the body was found. The camera apparently pointed west. It shows the pit, with a light layer of snow on the ground, the end of the drainage pipe, the disconnected section of pipe in the bottom of the pit and beside it, indistinctly, decedent's body. It shows also the west end of the bridge and a police car which brought the coroner to the place.

Exhibit H is a photograph taken with the camera pointed east. Witnesses testified it shows the west end of the bridge, the west concrete abutment, the cinder path leading to the bridge, the curve in the cinder path and the edge of the pit. The day decedent's body was found there was a little more snow on the ground than the following day when Exhibit H was taken.

Glenn Davis testified that, at the northwest corner of the bridge, the pit was six feet from the north edge of the cinder path. The coroner, Doctor Shaw, testified the approximate distance from the concrete barrier to where the end of the tile drained into the creek was about four or five feet. When he came to view the body he clung to the railing and the girders of the bridge to get down to it. He testified the pathway between

the bridge and the pit "was not very wide * * * possibly four to six feet wide." B. H. Frost placed the distance at eight and one-half feet. The estimate of Mrs. Davis was six feet.

The evidence indicates the curve in the cinder path was about twelve to sixteen feet west of the pit. Witnesses testified that a person walking easterly on this cinder path if he were to continue east in a straight line would walk on the north side of the concrete abutment and into the pit. A witness testified that one morning .in a snowstorm, " * * * I had my head down walking down what I thought was the path, and the first thing I knew I was over pretty close to the edge of this embankment. * * *. Snow was on the ground and you couldn't tell where you were."

The city maintained a street light at the northwest corner of the bridge but it was unlighted at times and had not been burning for several nights prior to and including March 24, 1952. The cinder path and the vicinity of the pit were enveloped in darkness. There was a light snow on the ground. Some people walking along the cinder path that night were unable to see their way and found it necessary to use a flashlight. The record does not show Mr. Vincent intentionally left the cinder path. There was no barrier, fence or other structure to prevent a person who walked east in the. direction of travel along the cinder path from falling into the pit if he failed to make the turn near the bridge and continued forward about twelve or sixteen feet.

Mr. Vincent's body was found in the pit at about seven o'clock the following morning. Doctor Shaw testified he examined the bottom of the pit and found an indentation such as might have been made by a man's head; that Mr. Vincent's death was caused by head and brain injuries, and "The autopsy findings were consistent with the belief that the injuries were received as a result of a fall into the deep gorge when the man struck his head on the frozen ground." Doctor Shaw expressed the opinion Mr. Vincent died about three or three-thirty that morning, several hours after he had fallen into the pit. Plaintiff's theory is that Mr. Vincent, walking homeward along the cinder path in the darkness, unintentionally left the cinder

path near the bridge and fell to his death in the pit, and that the proximate cause of his fall and death was the negligent failure of the City to maintain a proper barrier and street light.

██ ██ I. Municipal corporations are required to exercise ordinary care to make and keep their streets and public ways, including bridges and their approaches, reasonably safe for travelers thereon using ordinary care. This requires municipalities to protect travelers from dangerous places or hazards in all parts of the way opened to public use. Nor is such requirement limited to defects within the traveled way. Bixby v. Sioux City, 184 Iowa 89, 96, 164 N.W. 641, 644, contains a good statement of this rule. The court there pointed out it knew of no reason or authority for saying the care required of the municipality "does not include the fence or barrier, if any, erected between the street and a dangerous cliff or excavation, over which a traveler using such street is liable to fall. Indeed, it has often been held that the lack of a proper barrier in such a situation, although the excavation or pit is not within the street boundary, is, nevertheless, a defect in the street, within the meaning of the law."

A striking example of the application of this rule is found in Manderschid v. Dubuque, 29 Iowa 73, 87, 4 Am. Rep. 196, which states:

"The bridge, it is insisted, is a quarter of a mile from the beginning of the extension of Sixth Street proper. It is insisted that it cannot be possible the bridge is in such near proximity to the street, that, in contemplation of law, the city would be liable for injuries sustained by reason of its dangerous character.

"We think differently. It is the duty of the city, not only to keep the street in repair, but to erect barriers and protections to prevent travelers from passing, without its limits but in its general direction, into dangers and obstructions. The city cannot be permitted to suffer a street to terminate in a kind of a cul de sac leading to precipices or pitfalls, whereby the life and property of the traveler is endangered.

"The court by the instruction very properly left the jury to determine whether the defective bridge was so near the public highway as to be dangerous to persons traveling thereon."

In Hall v. Incorporated Town of Manson, 99 Iowa 698, 703, 68 N.W. 922, 924, 34 L. R. A. 207, plaintiff while walking on a crosswalk, in the darkness, inadvertently stepped into an unguarded and unlighted excavation for water mains, at the edge of the crossing. The court stated the town's duty to keep its crossing in a reasonably safe condition extended not merely to the surface of the street or walk but to those things within its control which endangered the safety of those using the street or walk properly, and that a street or sidewalk might be defective due to the presence of something which was a menace to the safety of users as well as to defects in construction. "The real question is, is the defect complained of in the walk itself, or so near it as to endanger the persons of those properly using it."

The defect in Parker v. Incorporated City of Bedford, 139 Iowa 545, 547, 117 N.W. 955, 956, was a ditch in the parking, a number of feet from the traveled way. The decision states: "The question whether, under all the circumstances, the city should have left such an excavation so near the traveled portion of the street without guard or barricade, was a question for the jury."

Whitlatch v. Iowa Falls, 199 Iowa 73, 79, 201 N.W. 83, 86, involved an unguarded approach to a bridge. That decision states: "The finding of the jury that the proximate cause of the injury was the failure to maintain proper barriers or guardrails at the point in question finds support in the evidence. * * * The court withdrew all other allegations of negligence from the jury, and no question was submitted as to the presence of the ruts or depressions in the street."

Lawrence v. Sioux City, 172 Iowa 320, 322, 154 N.W. 494, 495, involved a death caused by an automobile missing a turn in an approach to a bridge which spanned a gully. The decision states:

"The street had been graded to within about thirty feet of the gully, and at the end of the grade, the traveled way swerved to the west before crossing the bridge. The driver, as he approached, observed the east railing of the bridge, and, owing to its location, supposed it to be on the west side and that he was

driving toward the bridge. The night was dark and there were no lights or barricades; and when Knott first noticed that he was east of the bridge, the car was so near the gully that he could not stop before being precipitated to the bottom of the gully * * *.

"That the evidence was such as warranted a finding that the city was negligent is not questioned."

Space does not permit reference to many of the decisions cited by defendant. Among these is Cox v. Des Moines, 235 Iowa 178, 16 N.W.2d 234. There the proof of negligence was held insufficient to generate a jury question. The earlier decision in that case, Cox v. Des Moines, 233 Iowa 272, 7 N.W.2d 32, in which the pleaded facts were held sufficient, is more comparable factually to the case at bar. However, Cox failed to prove the case he had pleaded. He pleaded he inadvertently stepped off the sidewalk. He proved he did so intentionally. In various other respects noted in the decisions the proofs in the last appeal did not conform to the pleadings in the earlier appeal.

O'Laughlin v. Dubuque, 42 Iowa 539, 541, is not factually in point. That case involved a pedestrian hastily crossing a street diagonally and not on a regular crossing, who slipped on ice and fell just as he reached the opposite sidewalk. An instruction that travelers would not be compelled to use crosswalks, if it was necessary to avoid an obstruction or apparent danger, was held erroneous because there was no evidence of any such obstruction or apparent danger.

The decisions cited by the trial court as supporting the order directing the verdict were Alline v. Le Mars, 71 Iowa 654, 33 N.W. 160, and Earl v. Cedar Rapids, 126 Iowa 361, 364, 102 N.W. 140, 141, 106 Am. St. Rep. 361. The decision in Alline v. Le Mars was based upon contributory negligence and the question of the negligence of the city was not determined. Moreover, that plaintiff was able to see the limits of the walk and voluntarily stepped from it. Earl v. Cedar Rapids allowed recovery by a pedestrian who fell through an open trap door into a cellarway. The decision states: "Even an excavation entirely outside the street line, but so near thereto as to endanger the traveling public, is held to be a nuisance * * *."

■ Many courts subscribe to the rule that where excavations, declivities, embankments or other dangerous defects substantially adjoin the street or sidewalk or are in such close proximity thereto as to make it unsafe, it is the duty of the municipality to take reasonable precautions to render it safe for travel by those using it in the ordinary way. 63 C. J. S. 159, 160, Municipal Corporations, section 822; 25 Am. Jur. 814, Highways, section 531. How far a dangerous place must be from a highway in order to cease to be in close proximity to it must be determined with regard to the circumstances of the particular case. 25 Am. Jur. 814, Highways, section 531.

Warner v: Inhabitants of Holyoke, 112 Mass. 362, 363, points out that the law has nowhere undertaken to define such distance in feet or inches and it is a practical question for the jury. Such distance is merely a circumstance to be considered in determining whether the way is reasonably safe for public travel.

Crogan v. Schiele, 53 Conn. 186, 196, 1 A. 899, 901, 55 Am. Rep. 88, states:

"'We think that in making the defendant's liability to depend upon the dangerous condition in which the excavation was left by the defendant rather than upon its distance from the street, the judge adopted the true criterion. It is the dangerous character rather than the exact location of the excavation that determines the duty and consequent liability of the defendant in this respect. * * * Whether the excavation could, with a due regard to the rights of passengers on the street, be left unguarded, or could not, depended upon the question whether, being unguarded, it endangered the travel or not; if it did not, no matter how near it was to the line of way; if it did, no matter how far it was removed.'"

In Prather v. Spokane, 29 Wash. 549, 70 P. 55, 59 L. R. A. 346, 92 Am. St. Rep. 923, plaintiff, riding a bicycle at night along a cinder bicycle path maintained by the city, missed a turn in the path and was injured by striking a near-by unguarded curb, gutter and sidewalk. Judgment for plaintiff was affirmed.

Oklahoma City v. Meyers, 4 Okla. 686, 690, 696, 46 P. 552, 554, 555, held the court properly refused to give an instruction that if the excavation was found to be from four to eight feet from the line of the street, and that a pedestrian would not, by reason of the surface of the ground, fall into such excavation unless he first left the street, then if plaintiff left the street and fell into such excavation, the city would not be liable. The court stated: "This instruction would preclude a recovery in the case, unless the excavation lies so close to the street that a person passing along the sidewalk would fall from the street into the excavation without passing over any intermediate ground. * * * As to how close to the street the excavation must be in order to allow recovery would, in most cases, be a question for the jury."

In City of Beaumont v. Kane, Tex. Civ. App., 33 S.W.2d 234, 236, recovery was allowed plaintiff who drove his automobile down Pearl Street, across Austin Street, upon the approach to the city wharf and across the wharf into a river. The night was dark and rainy and there were no lights nor guards. Pearl Street and Austin Street were paved. "From the south line of the intersection of Austin Street to the edge of the wharf is about 135 feet. About 65 feet of this distance from Pearl Street is covered with shell, and the balance of the way to the edge of the wharf with plank." A witness testified: "Unless you would call the rough surface of that shell an obstruction, there is not any obstruction between the end of the street and the docks, or was not at that time, such as rails or guards, and so forth."

The rule that it is the duty of a municipality to erect barriers to protect travelers from dangerous structures or excavations outside the highway is especially applicable where, as here, such structures or excavations are in the general direction or course of travel upon the highway. 25 Am. Jur. 816, Highways, section 532. Thus in Manderschid v. Dubuque, supra, 29 Iowa 73, 4 Am. Rep. 196, the dangerous structure was a quarter of a mile from the city street. Mayor and City Council of Baltimore v. State, 146 Md. 440, 126 A. 130, involved a declivity about twenty-eight feet from the traveled way. In Lawrence v. Sioux City, supra, 172 Iowa 320, 154 N.W.494, the turn in the way was about thirty feet from the gully. In City of Beaumont

v. Kane, supra, Tex. Civ. App., 33 S.W.2d 234, the danger was one hundred thirty-five feet distant. In Fort Worth v. Lee, 143 Tex. 551, 186 S.W.2d 954, 159 A. L. R. 125, it was fifty-five feet. In most of these cases, as in the case at bar, conditions were such as would be likely to deceive a traveler as to the limits of the traveled way and the dangerous defect.

Weiser v. St. Paul, 86 Minn. 26, 29, 30, 90 N.W. 8, 9, 10, is such a case. There, a street sixty feet wide narrowed to a fill about twenty-five feet wide as it crossed a ravine. The pedestrians' approach from the west was a pathway ninety-five feet long which connected with a sidewalk along the north part of the street and turned slightly to the south to reach the fill. In the darkness plaintiff failed to make the turn and instead turned to the left along a culvert, "traveling on in the same general direction of the street, until he came to the edge of the fill, where, the culvert turning abruptly, he stepped off, and was precipitated into the ravine * * *. A person going south along this path would approach the culvert at an angle, so that, if he were to follow it, he would turn slightly to the left; if he kept on directly to the front, he would cross the culvert, and walk into the ravine between the culvert and the fill. * * * it was for the jury to decide whether or not the city had maintained the place in a reasonably safe condition * * *."

The recent case of Mix v. Minneapolis, 219 Minn. 389, 18 N.W.2d 130, 134, 135, where the defect was eighty-five feet outside the city limits, contains a good discussion of the rule here applicable. It approves the Weiser case and cites various authorities, some of which are cited herein. Among other decisions are: Johnson v. State, 186 App. Div. 389, 173 N. Y. S. 701, aff. 227 N. Y. 610, 125 N.E. 919; Ross v. State, 265 N. Y. 632, 193 N.E. 420; Miller v. Duluth, 134 Minn. 418, 159 N.W. 960, 961.

There was no evidence decedent intentionally left the cinder path. On this point Drew v. Town of Sutton, 55 Vt. 586, 590, 45 Am. Rep. 644, 645, states: "This is in no just sense a case of voluntary departure nor of straying from the way, like many of the cases relied upon by the defendant, and the law of those cases is not applicable." Nor was there any evidence decedent was a trespasser. Apparently he did not leave the prop-

erty of the city and it does not appear he went outside the line of the highway. Decisions which involve travelers "straying from the highway" are not factually in point. The record would support a finding decedent walking east along the cinder path in the darkness, merely missed the turn and continued to walk east within the boundaries of the highway.

Chicago v. Gallagher, 44 Ill. 295, 296, 297, is factually similar to the case at bar. It was an action for wrongful death in Ogden's slip, at one of the street crossings in the city.

"It appears that the slip was crossed by a bridge, which was much narrower than the street. The sidewalk on each side of the street ran to near the slip and then curved, so as to pass on the bridge, so that, in approaching, a person failing to follow the curve would, by pursuing a direct line, walk into the slip. There was no railing, wall or guard on the outer edge of this curved sidewalk leading to the bridge. Hence, a person proceeding straight forward would meet with no obstruction to being precipitated into the slip. This was certainly extremely dangerous to persons passing in the dark. Persons would be liable to be precipitated into this slip, filled with mire and water, which under any circumstances would be dangerous to life, and extremely so in the dark * * *." Decedent was last seen walking toward the bridge and later his body was found in the slip behind the unguarded curve in the approach.

"* * *. Having permitted the excavation to be made, it was the manifest duty of the city to have made it secure, and fully protected the public against such hazards, by erecting railings, guard or barriers, suitable and sufficient to protect persons from walking into the slip, under any circumstances, in passing."

One difference between the cited case and the case at bar is that there the city furnished a sidewalk, here merely a cinder path with a somewhat irregular surface upon which a light snow had fallen, so that conditions underfoot here would probably be more deceiving to the traveler.

In Bennett v. Kings County, 124 Cal. App. 147, 150, 12 P.2d 47, 48, the center line of the bridge made an angle of thirty-five degrees with the center line of the traveled portion of the road, so that a person traveling down the center of the road would run

into the slough, unless he made a sharp turn to enter the bridge. There were no guardrails either upon the bridge or its approaches. Bennett left the home of a relative in the darkness and a dense fog. His body was found in the slough in his overturned automobile. "The tracks made by the machine were visible and showed that it had come along the center of the road and that instead of making the sharp turn onto the bridge, it had gone straight ahead into the slough. The wheels of the car nearest the bridge had either just touched or just missed the corner of the bridge.

The reason given by the distinguished trial court for directing the verdict in favor of the City was that the record showed (as a matter of law) the pit was not in such close proximity to the cinder walk as to require the City to guard it. With this we are unable to agree. The precise question at this point, we believe, was not the distance between the cinder path and the pit, but whether the pit endangered travel along the cinder path. Under the record in this case that was not a question of law for the court. The deep pit, with its precipitous sides, was within the street line and would be in the direct line of travel of one walking east, who failed to make the turn in the cinder path and proceeded ahead in the same direction, and would be only a few steps distant. The safety of one who could not see the cinder path or pit in the darkness would be more imperiled. These and other circumstances shown in the record would warrant a finding of fact that travelers along the cinder path were endangered by the pit. Hence, the issue of the alleged negligence of the City in failing to properly guard the pit was one of fact for the jury and the order directing the verdict was erroneous.

II.  The City contends plaintiff failed to establish any causal connection between the negligence charged and decedent's fatal injury, and that it was entitled to a directed verdict on that ground. With this contention we do not agree. As to what took place at and immediately prior to the time decedent suffered his fatal injury the evidence is circumstantial. The City points to evidence he was intoxicated. Plaintiff's evidence indicates decedent arrived at the bus terminal at eleven-thirty p.m. apparently en route to his home from downtown Des Moines. It was his custom to take the most direct route from the bus terminal to

his home. This was along the Easton Boulevard sidewalk and cinder path to and across the bridge. His body was discovered in the unguarded pit adjacent to the cinder path. The nature of his injuries and an indentation in the bottom of the pit beside his cap, as though made by a human head, would warrant the inference his death resulted from a headlong fall into the pit.

Plaintiff was not required to prove her theory of causation by evidence so clear as to exclude every other possible theory. The evidence need be only such as to make that theory reasonably probable, not merely possible, and more probable than any other hypothesis based on such evidence. McGee v. Jones County, 161 Iowa 296, 299, 300, 142 N.W. 957, 48 L. R. A., N. S., 141; Rodefer v. Turner, 232 Iowa 691, 6 N.W.2d 17; Lunde v. Cudahy Packing Co., 139 Iowa 688, 117 N.W. 1063; Central Natl. Bk. & Tr. Co. v. Lederer Strauss & Co., 236 Iowa 16, 17 N.W.2d 817; Hayes v. Stunkard, 233 Iowa 582, 10 N.W.2d 19.

In Chicago v. Gallagher, 44 Ill. 295, 297, supra, the court disposed of this phase of that case in the following language: "* * * the jury were warranted in finding that deceased came to his death from the want of necessary and proper protections at this bridge. He was undeniably drowned at that place, and when last seen he was at a short distance from the bridge, and when he left Mr. Denny's he seems to have proceeded in the direction of the bridge. It is but reasonable, then, to suppose that it was on that occasion that he fell into this pool and was there drowned. All of the circumstances tend to this conclusion, and we are not disposed to disturb the finding of the jury."

So in the case at bar, although there may be some circumstances not in accord therewith, the evidence would justify a finding decedent fell into the pit while attempting to traverse the cinder path, on his way to his home, and that the proximate cause of his fall and death was the negligence of the City in failing to guard the pit. Hence, the question of proximate cause was one of fact for the jury.

For the error in directing the verdict for defendant as determined in Division I hereof the judgment is reversed.—Reversed.

BLISS, GARFIELD, MULRONEY, THOMPSON, and LARSON, JJ., concur.

WENNERSTRUM, J., and HAYS, C. J., and SMITH, J., dissent.

WENNERSTRUM, J. (dissenting)—The majority opinion in my judgment does not give consideration to certain fundamental principles that have been applied in cases of the character here under consideration, and because of that fact I feel under obligation to respectfully dissent.

It should be kept in mind the material allegations relative to the liabilities of the City of Des Moines as set out in the plaintiff's petition are limited to the following:

"A. In failing to maintain a barrier or railing at the point where said decedent fell to his death in the above described pit.

"B. In failing to maintain a street light at the place where said decedent fell to his death into said pit.

"C. In failing to erect and maintain a sign or other warning apprising pedestrians using the cinder path above described of the presence of the pit located immediately below said path."

. The statutory liability of the City of Des Moines must be based upon the provisions of section 389.12, 1950 Code, which is as follows: "Duty to supervise. They shall have the care, supervision, and control of all public highways, streets, avenues, alleys, public squares, and commons within the city, and shall cause the same to be kept open and in repair and free from nuisances."

There is no allegation in plaintiff's petition of any defect or obstruction in the street or cinder path. However, it appears to me if any liability on the part of the municipality is to be placed in the instant case, it must be by reason of negligence of the municipality in its failure to properly maintain its streets. This court in the case of McCormick v. Sioux City, 243 Iowa 35, 37, 38, 50 N.W.2d 564, 566, speaking through Justice Hays, stated:

"The liability of a municipal corporation *for injuries due to defects or obstructions in its streets is for negligence only, the duty of the city being only to maintain them (the streets) in a reasonably safe condition,* with no liability for consequences which could or would not be reasonably foreseen. Where reasonable minds might differ as to whether an accident could or should have been reasonably anticipated *from the existence of the alleged defect or obstruction (of the street)* the question as to the negligence of the city becomes a question for the jury." (Words in parantheses and italics supplied.)

A sidewalk constitutes a part of the street. Central Life Assurance Society v. City of Des Moines, 185 Iowa 573, 577, 171 N.W. 31, citing Warren v. Henly, 31 Iowa 31. The majority opinion suggests the photographs in evidence show the cinder path was rough and irregular. It also states the pit was in line with the cinder path before the path turned south and toward the bridge. And it continues and states in substance that the pit or ditch would be in line with the street but outside the traveled portion thereof. However, as previously stated, there is no allegation in the petition or any of the amendments thereto which alleges there was any defect in either the street proper or the cinder path, that the hole or ground where it is located is any part of the street or that the claimed place of danger was in line with the street. Consequently unless it is shown the pit here involved was so immediately adjacent to the cinder path that the possible danger of falling into it could or should have been reasonably anticipated, the City should not be held liable and the question of the claimed negligence for failure to place barriers around the pit should not be submitted to a jury.

There is some variance in the testimony of the several witnesses for the plaintiff. We shall not set out the testimony to disclose this fact inasmuch as it is the obligation of this court to consider the evidence in the light most favorable to the plaintiff in passing on a motion for a directed verdict. Although there is some testimony which might be interpreted to the effect the distance from the cinder path to the hole was twenty-eight feet, yet for the purpose of this dissent and the arguments hereinafter set forth we can consider as substantially correct the statement in the majority opinion that, "The evidence indicates the curve in the cinder path was about twelve to sixteen feet west of the pit. * * *."

It was apparently the theory of the plaintiff and is the theory expressed in the majority opinion that the decedent walked east as the cinder path started to curve and continued on twelve to sixteen feet and fell into the pit or hole. It is maintained there was no barrier to prevent a person from doing so. It is here submitted the evidence justifies the interpretation that as the cinder walk proceeded east toward the railing and bridge referred to in the majority opinion the distance from the path to the hole or pit

decreased. However, that fact is not of particular importance in the light of the theories expressed by the plaintiff and as set out in the majority opinion.

The basis for this dissent can be summarized by stating it is my conclusion under the rules of law heretofore announced by this court and other authorities the facts disclosed by the evidence in this case do not justify their submission to a jury for its determination.

I. In 25 Am. Jur., Highways, section 531, page 814, the general rule relative to the liability of a municipality for failure to place barriers or railings where dangerous places or hazards are substantially adjacent to a walk or street is set forth: "Proximity as Affecting Liability.—As a general rule, the duty of a municipal or quasi-municipal corporation or of a private individual to guard excavations or other dangerous places or hazards and the resulting liability for failure to do so exist only when such places are substantially adjoining the way, or in such close proximity thereto as to be dangerous, under ordinary circumstances, to travelers thereon who are using ordinary care, or, as it is sometimes stated, where they are so located that a person walking on the highway might, by making a false step or movement, or upon being affected with a sudden giddiness, or by other accident, come in contact therewith. No definite rule can be laid down as to how far a dangerous place must be from the highway in order to cease to be in close proximity to it, but the question is a practical one, to be determined with regard to the circumstances of the particular case. In the determination of the question whether a defect or hazard is in such close proximity to the highway as to render traveling upon it unsafe, that proximity must be considered with reference to the highway 'as traveled and used for the public travel,' rather than as located, and the proper test for determining the necessity for a barrier, or liability for injury, is whether the way would be dangerous to a traveler so using it, rather than the distance from it of the dangerous object or place."

And in 25 Am. Jur., Highways, section 532, pages 817, 818, it is further stated that except under certain circumstances "* * * the public authority is ordinarily under no obligation to put up

railings or barriers to prevent travelers from leaving the traveled portion of the highway or from leaving the highway and running into dangers on adjoining property where the way itself is safe, and is not liable to a person who so leaves the highway and is injured, notwithstanding there is nothing to mark the boundary line of the highway. In other words, barriers are intended to make the highway safe, and not to mark or define its limits so as to warn travelers not to go outside them."

In 40 C. J. S., Highways, section 262, pages 307, 308, it is stated: "The duty of maintaining barriers, railings, or other guards or signs, and the consequent liability for a failure to do so, may arise where such duty is imposed by statute, and to the extent, or under the conditions, prescribed by the statute. In the absence of such a statute, or under conditions to which the statute does not apply, the duty and liability arise only where the situation is inherently dangerous, or of such an unusual character as to mislead a traveler exercising reasonable care, and the accident must, in order to be actionable, have been such that the presence of the guard or signal would have prevented its occurrence. There is no duty to fence a road or to provide barriers merely to prevent travelers from straying off the highway."

In Village of Mineral City v. Gilbow, 81 Ohio St. 263, 276, 277, 90 N.E. 800, 802, 25 L. R. A., N. S., 627, 630, 631, it is stated: "There was no obligation resting upon the village to prevent her from going outside of the street, the dangerous place being outside of the street and not so near as to endanger those using it in the ordinary and proper way. *Its obligation is to keep the streets open and in repair and free from nuisance; and its liability extends no farther than the neglect of such duty.* Furthermore, the owner of adjacent property, unless expressly so required by statute, is not bound to keep the street or sidewalk in repair and safe for travel, except as to defects created by himself; nor is he under any legal obligation to erect and maintain barriers to protect travelers on or along the street from a dangerous place which is entirely on his own premises, unless the place is so near the street as to render the street, or sidewalk thereon, itself dangerous for travel. In the latter case it is the duty not only of the abutting owner, but of the municipality also, to see that travelers

on the street are warned or protected. These propositions are generally recognized as sound law, and the authorities are so numerous and so readily accessible that it is not thought to be necessary to cite them here. But in determining whether it is necessary, in a particular case, that a barrier should be erected in order to make the highway safe for travelers thereon, *the true test is not the distance from the highway of the dangerous object or place, whether it be much or little; but whether a traveler in passing along the highway and exercising ordinary care would be subjected to such imminent danger that it would require a barrier to make the highway safe.* Kelley v. City of Columbus, 41 Ohio St. 263, 268; Alger v. City of Lowell, 3 Allen (85 Mass.) 402, 405; City of Norwich v. Breed, 30 Conn. 544, 545." (Italics supplied.)

In the case of McHugh v. City of St. Paul, 67 Minn. 441, 443, 70 N.W. 5, it is stated: "Nor are towns necessarily bound to fence, or erect barriers, to prevent travelers from getting outside of the road or way. 2 Dillon, Mun. Corp. (4th Ed.) §1005. The reason for the rule is well stated, in cases of this kind, in Sparhawk v. City of Salem, 1 Allen, 30, as follows: 'It appears that the highway in question was safe and convenient for travelers throughout its entire width, and the land adjoining it was also safe and convenient to travel upon. After getting entirely outside the highway in safety, the traveler must proceed still further in order to reach a dangerous place. If he reached that place, and was injured, the want of a railing was remotely, and not immediately, connected with the injury. *If cities and towns are bound to protect travelers against such dangers, by erecting railings to prevent them from straying out of the highway, it is difficult to see the limit of their liability. * * *.'*" (Italics supplied.)

And in Barnes v. Inhabitants of Chicopee, 138 Mass. 67, 68, 52 Am. Rep. 259, 260, the rule relative to liability of a municipality with circumstances similar to the instant case is stated to be as follows: "*To entitle the plaintiffs to recover, they must show that the defect in the highway 'which caused the injury existed either in the highway, or so immediately contiguous to it as to make it dangerous to travel on the highway itself.'* Sparhawk v. Salem, 1 Allen, 30. The test is 'whether there is such a risk of a

traveller, using ordinary care, in passing along the street, being thrown or falling into the dangerous place, that a railing is requisite to make the way itself safe and convenient.' Alger v. Lowell, 3 Allen, 402. Adams v. Natick, 13 Allen, 429. A town is therefore 'bound to erect barriers or railings where a dangerous place is in such close proximity to the highway as to make travelling on the highway unsafe. *But it is not bound to do so to prevent travellers from straying from the highway, although there is a dangerous place at some distance from the highway which they may reach by so straying.*' Puffer v. Orange, 122 Mass. 389; s. c., 23 Am. Rep. 368, and authorities there cited." (Italics supplied.)

See also Briglia v. City of St. Paul, 134 Minn. 97, 158 N.W. 794, L. R. A. 1916F 1216; Flansburg v. Town of Elbridge, 205 N. Y. 423, 98 N.E. 750, 41 L. R. A., N. S., 546; Shea v. Town of Whitman, 197 Mass. 374, 83 N.E. 1096, 20 L. R. A., N. S., 980; annotations 20 L. R. A., N. S., 595; Sparks v. Kansas City, 236 Mo. App. 710, 160 S.W.2d 819.

Although the statement might be termed dictum and not determinative of the case, Justice Mulroney in Cox v. City of Des Moines, 235 Iowa 178, 181, 184, 16 N.W.2d 234, 236, states:

"We learn from the testimony that there was a shoulder that was nearly level having a drop of 4.8 inches from the level of the walk to a point four feet south, before the abrupt decline started, and that the grass was dry. * * *

"We are not referred to any case where the failure to erect a barrier four feet from a sidewalk where there is a steep decline has been held negligence."

In the latter case the claimed defect was in a city park.

II. Some of the Iowa cases cited in the majority opinion justify comment. The facts in the case of Bixby v. City of Sioux City, 184 Iowa 89, 96, 164 N.W. 641, 644, disclose the plaintiff's decedent was injured in driving through a barrier at a "T" intersection. The barrier had been placed at the end of the street as a guard from a cliff that was adjacent to and apparently parallel to the street into which the decedent drove. The statement quoted by the majority does not seem applicable to the instant case inasmuch as the pit or ditch here involved is not so immediately adja-

cent to the cinder path and is not of such close proximity "* * * over which a traveler using such street is liable to fall."

The majority also refers to the case of Manderschid v. City of Dubuque, 29 Iowa 73, 78, 4 Am. Rep. 196. The quoted portion from the cited case was in no way determinative of the case. A good portion of the cited opinion deals with the question whether there had been a dedication of a highway. The nature of the questions involved is stated in the first paragraph of the opinion:

"The questions, both of law and fact, arising in this case, relate to the character of the Sixth Street extension; whether in contemplation of law it was, at the time of the injury complained of, a highway. It is not denied, that, if it in fact was a highway, defendant is liable in this action, and that the verdict and judgment should be sustained. To these questions alone is our attention directed by the argument of the counsel of the parties, and no others will be considered."

A review of this case shows the action was the result of injuries to a horse owned by the plaintiff and sustained on a claimed defective bridge. The fact the bridge was a quarter of a mile from another street was not an issue in the case as noted by the previous statement.

The case of Hall v. Town of Manson, 99 Iowa 698, 68 N.W. 922, 34 L. R. A. 207, mentioned in the majority opinion, involves a situation where the plaintiff in using a crosswalk over a street fell into an excavation made in the street for laying water mains. The claimed defect was not outside of the street or its parallel walk line and the statement quoted in the majority opinion has no application to the present case.

In the case of Parker v. City of Bedford, 139 Iowa 545, 117 N.W. 955, it is shown the ditch, the claimed defect, was in the parking which is a part of the street. The quoted portion from the opinion has application to the facts there involved but is not applicable to a situation outside of the street or walk line.

The majority quotes from the case of Whitlatch v. City of Iowa Falls, 199 Iowa 73, 76, 201 N.W. 83, 85. In this case the opinion also states: "We are of the opinion that the elevation and narrowness of the grade, together with the manner in which

the south side was constructed, raised a question of fact, for the jury to determine: that is, whether it was the duty of the city, in the exercise of the care imposed upon it by the statute, to erect barriers or guardrails on the south side of the grade."

It will be observed because of the nature of the elevation and the narrowness of the grade and the manner in which the side of it was constructed a fact question was raised whether barriers or guardrails should have been erected. The fact the claimed defect was in part in the street and in part immediately adjacent to the street does not make the situation similar to the instant case, and the portion of the opinion quoted by the majority, in my opinion, has no application to the situation here under consideration.

The case of Lawrence v. City of Sioux City, 172 Iowa 320, 154 N.W. 494, is quoted from in the majority opinion. Most of the quotation is taken from the statement of facts. This citation is apparently set forth because the automobile was driven off the street at a curve. Under the facts as shown by that particular case it was held the finding that the city was negligent was not questioned. However, it does not necessarily follow that the cited case is here controlling.

III. The evidence of the plaintiff, interpreted most favorably to her and in keeping with her apparent theory of the case, disclosed decedent walked directly east at the bend of the cinder path. From this point in the path to the ditch the distance to the ditch is at least twelve to sixteen feet—perhaps twenty-eight feet. If at points closer to the bridge he walked off the path it was not because of the bend in the walk. The distance to the ditch at various points nearer the bridge is shown to be from fifteen to five or six feet. And at none of these points is there shown to be any defect in the walk or street. Then, too, the hole was outside of the walk or street line and not immediately adjacent to the cinder path.

Under the evidence presented by the plaintiff and the authorities heretofore cited and commented upon, I would affirm the trial court.

HAYS, C. J., and SMITH, J., join in this dissent.